## Hibernia Building Association *v.* McGrath, Appellant.

[Marked to be reported.]

*Gratuitous mandatory—Negligence—Fraud.*

A gratuitous bailee or mandatory is liable only for fraud or for such gross negligence as amounts to fraud.

*Treasurer serving without compensation—Negligence.*

A treasurer or director of a corporation may become a gratuitous bailee and his official position and designation will not in any degree change his liability as such bailee.

*Building associations—Payments by treasurer—Negligence.*

Under the by-laws of a building association the president was required to sign all orders drawn upon the treasurer for appropriations made by the board, the secretary to keep accurate minutes, to attest all orders drawn

on the treasurer for appropriations made by the board, the treasurer to pay
all orders drawn on him by order of the board, if signed by the president
and attested by the secretary. The treasurer served without pay, but gave
a bond for the faithful performance of the duties of his office. All appli-
cations for withdrawals of stock were required to be approved by the
board of directors. The secretary, however, kept no record of with-
drawals. It was a usual and customary thing to pay money to the sec-
retary for the members. Certain orders for withdrawals were signed by
the president and attested by the secretary in the usual form, and paid in
good faith by the treasurer to the secretary, who absconded with the
money. *Held* that, under the circumstances of the case, there was not
sufficient evidence of negligence on the part of the treasurer to submit to
the jury.

Argued April 4, 1893. Appeal, No. 220, Jan. T., 1893, by
defendant, John P. McGrath, from judgment of C. P. No. 2,
Phila. Co., June T., 1881, No. 99, on verdict for plaintiff. Be-
fore Sterrett, C. J., Green, Williams, McCollum, Mitch-
ell, Dean and Thompson, JJ.

Issue to determine validity of judgment.

Judgment was entered in the penal sum of $10,000 on war-
rant of attorney, accompanying bond given by defendant as
treasurer of plaintiff association. The judgment was open and
plaintiff filed a statement claiming that defendant had " wrong-
fully, illegally and unjustly " paid " over to a person or persons
unknown to said plaintiff, out of the money of the said associa-
tion, the sum of seventy-seven hundred and forty-five dollars,
which sums of money were in no wise due by the plaintiff to
anyone, and for which sums of money no order or orders had
been drawn upon him by the board, or previously approved by
said board, and the said sums of money the said defendant has
wrongfully withheld and still does wrongfully withhold from
plaintiff, and has failed and still does fail to pay and deliver
unto his successor in office the sums wrongfully withheld as
aforesaid." Defendant pleaded non assumpsit and payment.

The material portions of the by-laws of the plaintiff associ-
ation were as follows :

" The president shall sign all orders on the treasurer for
appropriations made by the board, and he shall perform such
other duties as usually pertain to this office or which may here-
after be prescribed by the by-laws of the association or resolu-
tions of the board."

" The secretary shall keep accurate minutes of each meeting of the board and read the same at the next meeting of the board. He shall also keep accurate minutes of each meeting of the association and read the same at the ensuing stated meeting of the board. He shall keep accurate accounts with all the stockholders and shall attest all orders on the treasurer for appropriations made by the board, and shall notify the stockholders of the annual meetings, by public notice in a newspaper published in the neighborhood, and also notify the directors of all special or adjourned meetings, at the expense of the association."

" The treasurer shall receive all moneys paid into the association, and pay all orders drawn upon him by order of the board, if signed by the president and attested by the secretary. He shall have in charge all bonds, mortgages, searches, policies of insurance, etc., on all property upon which money is loaned by the association, first giving his receipt therefor to the secretary."

The orders which defendant paid to the secretary, and for which suit was brought, read : " Mr. J. P. McGrath, treasurer, pay to" the payee the sum named. They were signed by the president and attested by the secretary, and the indorsements of the payee were forged by the secretary.

Defendant's points were as follows :

" 1. If the jury find from the evidence that the defendant paid the orders in evidence, in good faith, and with no actual knowledge of any fraud committed by the secretary, and the jury find that the said orders were signed by the president and secretary, the verdict should be for the defendant." Answered in charge. [3]

" 2. The defendant was only bound to use ordinary care under the circumstances, and if the jury find that the defendant honestly relied upon what the secretary told him, and paid the orders signed by the president and secretary, the verdict should be for the defendant." Answered in charge. [4]

" 3. Under all the evidence the verdict should be for the defendant." Refused. [6]

The charge of the court was as follows, by HARE, P. J. :

" This suit is brought to compel reimbursement of money, paid by the defendant in his capacity as treasurer, to persons who were not entitled to receive it, or more accurately to the

secretary of the association, who induced the defendant to make the payment by forgery and falsehood. The plaintiff contends that, however careful the defendant may have been, he is none the less answerable, because the money had not been appropriated by the board of directors, as the constitution and by-laws contemplated, and because the payments were made professedly for stock said to have been withdrawn, and a resolution of the board required that no such withdrawal should take place without their approval.

"I am unable to concur in this view, for the following reasons: The by-laws of the association provide that 'All orders on the treasurer for appropriations made by the board shall be signed by the president and attested by the secretary.' The first steps, therefore, were to be taken by the president and secretary, and it would be their duty to ascertain that the money had been appropriated and was due before authenticating the order with their signatures. A man who signs a paper directing another to make a payment is as responsible as if the instrument were written by him, and when the secretary attested the order he became a voucher for its genuineness. It was consequently the duty of these officers to ascertain that all the requisites had been fulfilled; and the treasurer might regard their signatures as evidence which dispensed with inquiry.

"I do not think that the words 'appropriations made by the board' materially vary the case, because it was the duty of the president and secretary to ascertain whether such an appropriation had been made before signing the order. The same answer may be made to the argument that the board had not sanctioned or approved of the withdrawal of the stock, because the signatures of the president and secretary justified the belief that they had looked into the matter and that all was right.

["The remaining question 'was the treasurer negligent?' does not appear to me so clear. It is said he was an unsalaried officer and therefore not bound to take as much care as if he had been paid. In many instances this argument holds good, but it is inapplicable where a different rule is laid down by the law or results from an express or implied agreement. A person who, with or without reward, has charge of the funds of others as a trustee or treasurer, should, I think, take as much care as does a prudent man in the conduct of his own affairs. He may

not have the spur of self-interest, but he should reflect that if a loss accrues through his negligence it will fall on those who left their money in his hands.] [1]

" It is said had the defendant examined the books and minutes of the association he would have found that the board had not sanctioned the withdrawal of the stock in question, and that, in point of fact, it did not exist. In considering this argument we should remember what I have already observed, that the first steps were to be taken by the persons who drew and attested the orders. If such an investigation was requisite it should have been made by the president and secretary before directing the payment of the money, and the defendant might reasonably presume that they performed their duty.

" It cannot be said that he acted without inquiry, because he was informed in every instance that the money was wanted to pay for the withdrawal of stock, and he had no reason to suppose the secretary was guilty of fraud and forgery. Our conduct through life is founded on the belief that the persons around are fairly honest where there is no reason to think the contrary. Business could not be carried on if we could not accept and act upon the statements of those with whom we deal, without verifying their truth.

" Where a rule is laid down for our guidance it must be scrupulously followed, and if the defendant had parted with the funds of the association without an order from the president, it would be immaterial that he was deceived by the secretary. The course actually marked out was that they should draw and sign the orders, and the treasurer should pay them.

" The plaintiff does not impeach the defendant's good faith, and [if you find that he acted with due care in making the payments the verdict should be in his favor.] [2]

" I decline the plaintiff's points and the last point presented by the defendant, and in answering his remaining points substitute the word ' due ' for ' ordinary.' [The term ' ordinary care ' may have a definite meaning among lawyers, but does not, I fear, convey a clear idea to people in general. What care should be taken in each case depends on circumstances. I therefore say that if the defendant acted with due care in reliance on the orders drawn by the president and secretary he is not answerable for the loss of the money." ] [5]

Verdict and judgment for plaintiff for $1,292.34.

A motion for a new trial was refused in the following opinion by HARE, P. J.:

"It seems proper to say in dismissing the motion for a new trial that had the case been left to me as one of law and fact I should have decided against the plaintiff. Still if there was evidence that the defendant was negligent, the question was eminently one for the constitutional tribunal, and we ought not to set aside the verdict. Whether there was enough to carry the case to a jury is to me doubtful; and, could the point have been reserved at the trial, our conclusion, I am inclined to think, would have been favorable to the defendant. The duty of a subordinate tribunal is, however, often best performed by putting the case in a shape that will facilitate a speedy decision by the tribunal of last resort. Should the Supreme Court be of opinion that the orders drawn on the defendant, John P. McGrath, in his capacity as treasurer, by the president and secretary of the corporation plaintiff, and authenticated by their signatures, were a warrant for the payment of the sums therein specified, and exonerated McGrath from making the minute investigation into the underlying facts which would have revealed the fraud practiced on him and the stockholders, the judgment of this court will presumably be reversed, without awarding a venire de novo.

"The plaintiff and defendant each asked for an instruction that the verdict must be in his favor, so that in any event and though the facts should be again left to a jury there will be a writ of error. The case has been tried twice, and granting a new trial might cause delay of months meanwhile, and leave the case less advanced than at present."

*Errors assigned* were (1–6) instructions, quoting them.

*Theodore F. Jenkins,* for appellant.—The effect of the portions of charge quoted in the first assignment of error was to leave the precise question on which the jury were to pass in obscurity and doubt: First National Bank of Carlisle v. Graham, 79 Pa. 117.

The rule relating to gratuitous bailee is that he is bound only to a slight degree of care: Tompkins v. Saltmarsh, 14 S.

& R. 275 ; Scott v. First National Bank of Chester Valley, 72 Pa. 471 ; First National Bank of Carlisle v. Graham, 79 Pa. 117 ; First National Bank of Allentown v. Rex, 89 Pa. 308 ; Coggs v. Bernard, 2 Ld. Raym. 909 ; 1 Sm. L. Cas., 8th ed. 369 ; Tracy v. Wood, 3 Mason, 132 ; Story on Bailments, §§ 11, 16, 17, 23, 39 ; Swentzel v. Penn Bank, 147 Pa. 140.

The treasurer was simply the custodian of the funds paid to the association. His duties were purely ministerial. He was to receive all moneys paid into the association and pay all orders drawn upon him. He was not even authorized to collect the dues from the members, that was confided to the secretary. It is clear, therefore, that there is nothing in the by-laws to make him responsible for extraordinary care. They simply make him a gratuitous bailee of the funds of the association.

Due care does not express a degree of diligence, and what may be required as due care in some circumstances would not be required in others. What is due care must be a question of law for the court and not a question of fact for the jury.

Not only did the proofs not show sufficient to carry the case to the jury, but they conclusively showed that defendant had not been guilty of any default. The burden of proving that the orders had not been approved by the board was upon plaintiff : Sh. & Redf. Neg. § 57.

The accounts of the treasurer having been annually audited according to the by-laws of the association, and having been confirmed by the auditing committee, could not be impeached, except on the ground of the fraud of the treasurer : Holgate v. Shutt, 27 L. R. Ch. Div. 111 ; Thompson on Building Associations, §§ 14, 15.

In the First National Bank of Allentown v. Rex, 89 Pa. 308, the evidence showed that the bonds had been deposited for safe-keeping without reward, and had been stolen by the president of the bank. This court held that sufficient evidence had not been shown to charge the bank.

Defendant's point, requesting binding instruction in his favor, should have been affirmed.

*John G. Johnson, James M. Beck* and *William F. Harrity* with him, for appellee.—Defendant was at least obliged to take some care, and was at least responsible for his gross negligence.

In all cases cited by appellant there is (1) a single act not partaking of the nature of a technical trust, (2) gratuitously assumed, and (3) the degree of care is not stipulated by any express contract, but is left to the implication of the law. Under these circumstances it is undoubtedly the law that the gratuitous bailee is only responsible for gross neglect. None of these three considerations exist in the present case. The duty here was not of a single act, but a continuous trust of great responsibility and of honor. This trust was not gratuitously assumed. It is true that no salary was paid, but the treasurer had advantages over his fellow members and received benefits resulting from his position. Besides, his bond for the faithful performance of his duties is under seal, which conclusively imports consideration.

The parties here did not leave the degree of care to be exacted from the treasurer to be inferred by law. On the contrary, the appellant, by an express contract, covenanted to do and perform certain things, and solemnly charged himself with the duty of fidelity.

Contrary to the express provisions of the by-laws defendant paid out the entire sum of $2,745 upon orders that were not approved by the board.

Assuming that the treasurer was justified in accepting the signature of the president and secretary as the voice of the board, it is to be noted that the orders in question did not attest that these orders were ever approved by the board. In the most favorable view to the defendant, it was his duty to pay the orders to the persons to whose orders they were drawn unless such orders were properly indorsed.

OPINION BY MR. JUSTICE THOMPSON, April 17, 1893 :

This action was brought by appellee against appellant, who was its treasurer, to recover from him the amount of certain alleged payments made by him to the secretary of the appellee and embezzled by him. The ground of liability was negligence in making these payments, although made upon orders signed by the president and secretary, who also attested the signatures of the payees. The money was either paid in cash to the secretary or by cheques payable to his order. Under the by-laws the president was required to sign all orders drawn upon the

treasurer for appropriations made by the board, the secretary to keep accurate minutes, to attest all orders drawn on treasurer for appropriations made by the board, the treasurer to pay all orders drawn on him by order of the board, if signed by the president and attested by the secretary. The orders upon which these payments were made were in the usual form, and signed by the president and attested by the secretary. The appellant having no reason to suspect or doubt the integrity of either the president or the secretary, and acting in good faith, paid them. As the appellant served without compensation for his services he became a gratuitous bailee, and as such is to be held liable for gross negligence only. In Tompkins v. Saltmarsh, 14 S. & R. 275, it was said : " Tompkins is charged as the bailee of Saltmarsh on an undertaking to perform a gratuitous act, from which he was to receive no benefit and the benefit was solely to accrue to the bailor, in which case the bailee is only liable for gross negligence, dolo proximus, a practice equal to a fraud." This rule thus stated is repeated in Scott v. Bank of Chester Valley, 72 Pa. 471 ; Bank of Carlisle v. Graham, 79 Pa. 117. His designation as treasurer did not change the character of the bailment. As provided in the by-law, the money was deposited with him to be paid out when required upon orders drawn in the manner as stated. A treasurer or a director may become a gratuitous bailee, and his official position and designation will not in any degree change his liability as such bailee. In Swentzel v. Bank, 147 Pa. 153, it was held that directors who are gratuitous mandatories were only liable for fraud or such gross neglect that amounts to fraud. In this case the appellant had no office or place in which as treasurer he transacted the business of the association. When orders were to be paid he testifies he would get notice from the secretary to come down and see him, that he had some that he wanted paid, and that he would go to the secretary's store and would there pay them to him. The appellee's business was managed principally by its secretary, who came in contact directly with its members. In view of the by-law and the modes of payment, it is very clear that he was a gratuitous bailee, and is to be held only to that diligence required as such. It is true he gave a bond as required by the by-law for the faithful performance of his duties, but that did not change the duty

cast upon him by law as a bailee. The condition of the bond was that he should perform and discharge the duties of the office, and shall keep a just and true account of the moneys received, and shall pay to his successor the moneys received, and shall account for the money so received. The condition of the bond therefore was that he should faithfully perform the duties in regard to the bailment that the law required him to perform.

It is however contended that, as the bond provides that he shall discharge all the duties now required or may hereafter be required of him as treasurer by the constitution, charter, by-laws, rules and regulations of said association, and as the board passed a resolution that all applications for withdrawals of stock must be approved by the board of directors at regular or special meetings of the association before payments are made, the appellant was guilty of negligence, without examining the minutes and without satisfying himself that the board had acted upon the withdrawals for which the orders in question purported to have been drawn. It is established by the proofs that no entries were made upon the minutes for application of withdrawals after 1884. In point of fact the secretary after this date kept no record in his minutes of any withdrawals. The duty of the president is to preside at all meetings of the board and to sign all orders for appropriations authorized by the board; that of the secretary is to keep accurate minutes of all meetings of the board, the accounts of the association, and to attest all orders on the treasurer for appropriations of the board. These orders in question were signed by the president and were attested by the secretary in the usual form. The president was and is still regarded as an upright man, the secretary was also at this time so regarded, the association trusted both of them implicitly and had no reason or cause to doubt them. If it treated them thus, it was natural that the appellant should in no manner suspect or doubt them. These orders therefore came to him with the certificate of the presiding officer, whose duty it was to preside at all meetings, and with the attestation of the secretary, whose duty it was to keep all records of the meetings. If the appellant had gone to the secretary he would doubtless have been assured that the board had acted upon these withdrawals, and having been so advised he would have been justified in paying them. It can be scarcely said to be

want of ordinary diligence to have paid these orders under these circumstances and with these signatures. They were in fact as express an authorization as if he had seen these officers officially. It was said in Swenzel v. Penn Bank, supra : "Nor do we think the directors were bound to regard the statements submitted to them as false, and the president, cashier and clerks as thieves. They had nothing to arouse suspicion. All of these gentlemen stood high. They were the trusted agents of the corporation." The appellant was not guilty of negligence in trusting the secretary, and in putting full faith in his action and that of the president in signing and sending to him the orders in question.

It is however argued that the negligence of the appellant consisted in paying the amounts to the secretary and not to the payees named in the order. If these payments were unusual or exceptional there might possibly be some force in the suggestion ; but the business of building associations is not carried on with the exact precision of banks in regard to payments. It is uncontradicted that generally orders were paid sometimes at the association if the persons came there, but at other times, if not convenient to these persons to be present at the meeting, they would request the treasurer as a favor to pay them at the secretary's office, and the appellant states that at times he went to the store of the secretary, saw him, and if orders were to be paid, paid them to him. It was thus usual and customary to pay the money to the secretary for the members. The reason of it was that the secretary, being the active manager of the association, came in constant contact with them, received money from them and paid money to them. It cannot be therefore said that there was negligence in paying the money under these orders to the secretary, with the signatures of the president, attested by the secretary.

In view of the good faith shown by the appellant and in view of the fact that the testimony in this case does not show negligence that would render him liable, the sixth assignment of error, " That under all the evidence the verdict should be for defendant," is sustained and the judgment is reversed.