# CHARLESTON.

EDNA S. WARDEN v. CITY OF GRAFTON

(No. 5168)

Submitted May 12, 1925.   Decided May 26, 1925.

MUNICIPAL CORPORATIONS—*City Held Liable for Injuries by Appliance for Amusement in Public Park.*

It is the duty of a city owning and operating a public park under authority granted by its charter, to exercise ordinary care in the construction and maintenance of mechanical appliances erected therein for the amusement and recreation of the public frequenting such park; and for a breach of such duty the city will be liable in damages to one injured while using such appliance for the purpose for which it was intended.

(Municipal Corporations, 28 Cyc. p. 1311).

(Note: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi).

Error to Circuit Court, Taylor County.

Action by Edna S. Warden against the City of Grafton. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*G. W. Ford* and *W. Merle Watkins,* for plaintiff in error.
*Walter F. Ball* and *O. E. Wyckoff,* for defendant in error.

MILLER. JUDGE:

Plaintiff recovered a judgment against the City of Grafton, for injuries sustained while sliding down a chute or slideway erected and maintained by defendant in a public park owned by it. From this judgment defendant has prosecuted the present writ of error.

The park in question, consisting of a tract of about seventeen acres, lying outside the corporate limits of the city, was purchased by the city and conveyed to it by deed dated August 21, 1911, the deed reciting that, "the above described real estate is conveyed to the City of Grafton for public uses and should said city abandon the property for such public uses, then, and in that event, the property shall revert to the said grantors, the Grafton Park Association." The

consideration recited· in the deed was $1,573.25. Section 19 of the city charter provides: ''The commission shall have the right to levy and collect taxes and grant licenses; * * * to lay, off, open, close, vacate or maintain public grounds, parks and public places, in or near the said city, and to guard and police the same.'' Acts 1913, chapter 79.

The chute or slideway on which plaintiff was injured was erected in the summer of 1921, the accident complained of occurring July 21st of that year. The length of the chute was about 30 feet, the one end 16 feet from the ground, the other within a few inches thereof. The body or trough of the slideway was 22 inches wide, with sides 5 inches high. Plaintiff was injured by a ring on the third finger of her right hand catching on a protruding bolt, on the outside of the slide, placed there to secure a plate, holding the upper and lower sections of the slide together. It appears that the bolt extended two or three threads through the nut holding the plate in place. Plaintiff's injuries were so severe that her finger had to be amputated. She had not been on the slide until the day of the accident, and was injured on her second trip down.

The question to be determined is whether a municipal corporation is liable to one injured in a public park owned and maintained by the municipality, on an appliance placed there by the municipal authorities for the use of the public in amusement and recreation, if the evidence shows negligence on the part of the municipality, its officers or agents. Defendant insists that it was acting in the exercise of a governmental function, and that no liability existed.

We find that a great difference of opinion has arisen over the question whether parks are held under the governmental or proprietary capacity of the city. Some courts have held that they are private property and that the city is therefore liable; others have denied recovery. The decisions are too numerous to be cited here. See note, 29 A. L. R. 863-880, where many cases are reviewed. The difficulty is in determining to which of the two classes a particular undertaking should be assigned. In *City of Trenton* v. *State of New*

*Jersey,* 262 U. S. 182, it was said: "The distinction between the municipality as an agent of the state for governmental purposes and as an organization to care for local needs in a private or proprietary capacity has been applied in various branches of the law- of municipal corporations. * * * Recovery is denied where the act or omission occurs in the exercise of what are deemed to be governmental powers and is permitted if it occurs in a proprietary capacity. The basis of the distinction is difficult to state and there is no established rule for the determination of what belongs to the one or the other class."

In *Gibson* v. *City of Huntington,* 38 W. Va. 177, it was held: "A municipal corporation is liable for injuries sustained by its negligent management of its corporate property, to the same extent that private individuals are liable for the same character of negligence." And in that case it was said: "It is now firmly established, by a long line of well considered decisions, that a municipal corporation is liable for injuries. occasioned by its negligence in the following three cases: (1) Failure to keep its streets, alleys, sidewalks, roads and bridges in repair under statute; (2) in the discharge of ministerial or specific duties, not discretionary or governmental, assumed in consideration of the privileges conferred by charter, even though there be the absence of special rewards or advantages; (3) as a private owner of property to the same extent as individuals are liable. * * * In the first class of cases, negligence is presumed, and notice of defect is not required. In the second and third classes, negligence must be alleged and fully proven. *Chapman* v. *Milton,* 31 W. Va. 385; *Biggs* v. *Huntington,* 32 W. Va. 55."

The general rule denying liability of municipal corporations for torts, is doubtless based on an analogy to the nonliability of the state for torts. And this rule is admittedly correct where the. municipal corporation is engaged in performing strictly governmental functions corresponding to those performed by the state. But cities, being a more adaptable unit for the purpose, have in recent years entered into

the economic life of its citizens, in many ways, and have undertaken enterprises formerly conducted by individuals or private corporations; often enterprises not essential to good government, but which are more in the nature of conveniences and places of amusement and recreation. Being based on analogy, it is obvious that the general rule is to be applied to municipalities only where their functions are similar to those of the state. It is true, the state delegates certain of its functions to be administered by cities and towns, because of the facility with which they can cope with local conditions and better serve the welfare of the citizens of the state residing within their jurisdiction. Almost universally the police, school, health, and fire departments are classed as governmental; while municipally owned water works, gas and electric plants, and street railways are recognized as proprietary. 4 Dillon on Municipal Corporations (5th ed.), secs. 1656-1661; *Wigal* v. *City of Parkersburg,* 74 W. Va. 25, 52 L. R. A. (N. S.); and notes and cases cited. As to the maintenance of sewers, the cleaning of streets and the removal of ashes and garbage by agents or employes of the city, there is again a diversity of opinion in the decisions. 4 Dillon, secs. 1659, 1662, 1741-1742; *Harris* v. *District of Columbia,* 256 U. S. 650.; McQuillan on Municipal Corporations, secs. 2689-2690.

Some effort has been made to base the distinction on the pecuniary benefit to be derived by the municipality and its citizens from the enterprise so conducted. This on the theory that taxes should not be levied on the citizens to pay for the torts of the municipality; but that where there is an income from the business, damages paid for torts of the city come from the profits of the business, and are not levied directly on the taxpayers. But this argument fails, for in case the city does not realize a net profit, the burden again falls on the taxpayer; and it would then be necessary to make a distinction between a profitable and a losing undertaking, and thus to deny recovery in some cases on very unsubstantial grounds. The cost or maintenance is levied upon the taxpayers; and for the very reason that the city has the means

at hand to keep its property in repair, is it not under a duty to do so? The same section of its charter that authorizes the City of Grafton to lay out and maintain parks authorizes it to "levy and collect taxes and grant licenses." Of course, if the park were the property of the state, and the city did not have the means to keep it in repair, the case might be different. But here the *city* purchased the property, for public uses it is true, but primarily for the use of its own citizens. The benefit, if any, inured to them. And in *Wigal* v. *City of Parkersburg, supra,* it was said that actual profit making is not essential to liability; that the question of liability rests solely on whether or not the city could be held guilty of negligence.

Then there is the justice of compensating the plaintiff for his injuries; and as was said in *Barnes* v. *District of Columbia,* 91 U. S. 540, 554, commenting on the case of *Bailey* v. *Mayor etc. of the City of New York,* 3 Hill, 531, and on appeal, 2 Den. 433, "The struggle in the New York Courts was between the dictates of that evident justice and good sense which requires that the city should indemnify a sufferer for the loss arising from the acts of those doing a work under its authority and for its benefit, and the technical rule which exempted it from liability for acts of officers not under its control or appointed by it." In the case just quoted from, the Supreme Court of the United States said: "The authorities establishing the contrary doctrine that a city is responsible for its mere negligence, are so numerous and so well considered, that the law must be deemed to be settled in accordance with them;" citing a score or more English and American cases.

Numerous decisions in this country are authority for the proposition that a municipal corporation is liable for negligence in the maintenance of parks and other public enterprises of like character. A city has been held liable for injuries to a child, resulting from the fall of a "merry-go-round," due to its negligent construction, *Canon City* v. *Cox,* 55 Colo. 264; and for injuries received by plaintiff while playing on a pile of lumber allowed to remain in a public

park, *Flora* v. *Pruitt,* 81 Ill. App. 161; and for the negligent act of its park commission in the construction of an amusement stand in a city park, *Denver* v. *Spencer,* 34 Colo. 270, 7 Ann. Cas. 1042. In *Capp* v. *City of St. Louis,* 251 Mo. 345, it was held that a city must keep its public parks in a reasonably safe condition for the benefit of all persons using them. In *Silverman* v. *New York,* 114 N. Y. S. 59, the city was held liable for injuries to one sitting on a bench in the park, whose foot was run over by a wagon employed in removing rubbish and driven by an employe of the city; and in *Barthold* v. *Philadelphia,* 154 Pa. 304, it was held that negligence was a question of fact for the jury, where a boy was drowned in a pool in a public park. In *Pennell* v. *Wilmington,* 7 Penn. (Del.), 229, a demurrer was overruled in an action to recover damages for injuries to plaintiff's decedent, resulting from defective or dangerous conditions in one of the city's public parks. In *Guilmartin* v. *Philadelphia,* 201 Pa. 518, it was held to be the duty of a city to use ordinary care to keep in a reasonably safe condition a square purchased for the purpose of establishing a public park, and which had been thrown open to the public, though not improved. In *Fort Collins* v. *Roten,* 72 Colo. 182, where plaintiff was seated in a chute, like the one involved in the present case, "sliding backwards with his palms on the outside of it when a ring which he wore caught on a projecting bolt and tore his finger off," the court said: "The city put up the chute; it therefore had notice of its condition. There was no question of disrepair. The city's duty was to use reasonable care to make the contrivance safe for the purpose for which it was to be used. Whether it did so or not was for the jury to say. In regard to the third point: Whether the plaintiff was using the chute in a negligent manner or was negligent in using it at all was for the jury."

See, also, on the questions of care and negligence, *City of Kokomo* v. *Loy,* 185 Ind. 18; *Sarber* v. *Indianapolis,* 72 Ind. App. 594; *Boise Dev. Co.* v. *Boise City,* 30 Idaho, 675; *Norberg* v. *Hagna et al.* (S. D.), 195 N. W. 438; *Van Dyke* v. *Utica,* 196 N. Y. S. 277; *Healy* v. *Kansas City,* 277 Mo. 619;

*Roullier* v. *Ville de Magog* (Can.), Rap. Jud. Quebec, 37 C. S. 246; *Corporation of Glasgow* v. *Taylor* (1922), 1 A. C. 44, 29 A. L. R. 346.

In some jurisdictions municipal corporations have been held liable for failure to exercise due care in the maintenance of parks for the same reason that it is the duty of a city to keep its streets in reasonably safe condition. While in this state, the statute, section 167, chapter 32, Code, imposes an absolute liability upon cities, towns and villages for injuries sustained by reason of the failure of the municipal authorities to keep in repair their streets and sidewalks, most of the states, outside of New England, impose a common-law duty on municipal corporations to use reasonable care to keep their streets and alleys safe. "The general doctrine of American courts, as we shall presently see, in respect of municipal corporations proper, has been to hold them civilly liable for injuries from defective streets." 4 Dillon on Munic. Corp. (5th ed.), sec. 1689. See, also, 8 McQuillin on Munic. Corp., sec. 2720; 2 Elliott on Roads & Streets (3rd ed.), sec. 788. And it appears from the authorities just cited, as well as from the adjudicated cases, that a distinction in this regard is made between municipal corporations proper and the other political subdivisions of the state. Mr. Dillon, section 1687, says: "We come now to consider the civil liability of municipal corporations for injuries caused by defects and unsafe streets and sidewalks. And here it is important to attend to the different grades of corporations, and to keep in mind the *distinction between municipal corporations proper and quasi corporations,* such as counties and townships, including in the latter, for this purpose, the *towns* of New England. With respect to corporations of the character last named, it is almost, but not quite universally considered, as we shall see below, that they are not liable to a civil action for damages occasioned by defective roads and bridges under their control as public agencies, unless it is so provided by statute, while a different rule on this subject is generally held in respect of municipal corporations proper." See *Barnes* v. *District of Columbia, supra,* p. 552. In *Kokomo*

v. *Loy, supra,* it is said: "The liability of a city in this state for the proper maintenance of a park may thus be consistently placed upon the theory that where a power is given and a duty imposed a corresponding liability arises for the proper. exercise thereof, and an analogy can be drawn ·between parks and streets in this regard."

From the· authorities examined and reviewed, there is to be observed a distinct movement toward the doctrine. that municipal corporations are under a duty of exercising reasonable care in the maintenance of parks and other public enterprises of like character, which we think is the more wholesome and equitable rule.

The judgment of the trial court will be affirmed.

*Affirmed.*