RAY ABBOTT, Appellant, v. CITY OF DES MOINES, Appellee.

No. 45627.

June 17, 1941.

Dickinson & Dickinson, H. Pierce Witmer, and Fey H. Moody, for appellant.

F. T. Van Liew, Bruce Flick, and Sam E. Orebaugh, for appellee.

MILLER, J.—This case was decided on the pleadings. Accordingly, the facts are not in dispute. The only question presented is whether plaintiff's petition states a cause of action.

Count One of the petition asserts that on November 23, 1939, defendant operated a municipal airport, consisting of a landing field, parking space, hangar, lunchroom, waiting room, offices for commercial airlines, repair shop, garage and other accommodations for the general servicing of those engaged in aircraft activities; the hangar was operated for hire and leased to Ernest Ahlberg; there was a tower and beacon light situated in and about the hangar; the tower, beacon light and hangar were operated in a proprietary capacity and not for a governmental purpose; defendant received material revenue from the operation thereof and also three cents per gallon on all gasoline and ten cents per gallon on all oil sold by Ahlberg; the maintenance of the tower and beacon light were necessary to the securing of such revenue; other buildings at the airport were operated in a proprietary capacity, including the lunchroom, waiting room, commercial airline offices and repair shop, from which substantial revenues were received; during the fiscal year ending March 31, 1940, defendant received income from rentals and operation of the airport amounting to $10,354.62 and expended for said operations $18,247.

The petition further asserts that on November 23, 1939, the hangar was completely filled with airplanes, completely enclosed without ventilation, contained high test gasoline which would explode at a very low temperature, was not tightly con-

fined in any tank or chamber and could and did escape and evaporate; the wings of said airplanes were made of inflammable, highly explosive materials; the hangar contained gas that was easily ignited and exploded; plaintiff housed a Curtis Robin plane in the hangar and paid a reasonable fee to defendant's lessee Ahlberg; defendant, through its employee, L. D. Bender, was engaged in making repairs and improvements on the tower upon which the beacon light was maintained; Bender was working in the top part of the hangar above a false ceiling that was so constructed that fire, sparks and hot electrodes from welding operations could fall through the false ceiling into the main part of the hangar where the airplanes were housed; he was using electric welding equipment, which produced sparks, fire, hot electrodes which dropped through the false ceiling to the main part where airplanes were housed and the air was laden with gas fumes; fire resulted destroying plaintiff's plane.

Plaintiff asserts that defendant was negligent in the following particulars:

"1. In allowing said airplanes to remain under the place where said welding operations were being conducted and where sparks, fire and hot electrodes were falling through said false ceiling and onto the wings of said airplanes.

"2. In failing to properly ventilate said hangar and the air space therein and in failing to remove from said hangar the inflammable gas and fumes, but on the contrary permitting said hangar and the air space therein to contain said highly inflammable gas and fumes."

Plaintiff asserts that he was free from contributory negligence and demands judgment for the value of the plane.

Count Two of the petition incorporates therein Count One, asserts that the condition therein described existed for three or four days and constituted a nuisance which defendant failed and neglected to abate and because thereof plaintiff demands judgment for the value of his plane.

Defendant filed a demurrer to both counts of the petition. Ground one of each demurrer asserted that Ernest Ahlberg, the lessee of the hangar, was a necessary party. Ground two of the demurrer to Count One and ground three of the demurrer to

Count Two asserted that the petition shows on its face that plaintiff's injury was the result of the operation of a municipal airport, that Chapter 303.1 of the Code, 1939, declares the operation of such airport to be for a public purpose, as a matter of public need and that the liability of a city in connection therewith shall be no greater than that imposed in the maintenance and operation of public parks, that defendant was engaged in a governmental function and, in connection therewith, is not liable for its negligence or the negligence of its employees or agents. Ground two of the demurrer to Count Two of the petition asserted that, if a nuisance existed at the hangar, it was caused by Ahlberg and the petition did not allege that Ahlberg was an agent of defendant.

The court sustained defendant's demurrer. Plaintiff stood on the ruling, refused to plead further and the action was dismissed at plaintiff's costs. Plaintiff appeals to this court.

 In determining the questions presented herein, it is important to bear in mind the effect of a demurrer to a petition. Appellant contends that, because the petition alleges that the hangar, tower and beacon light were operated in a proprietary capacity and not for a governmental purpose, such allegation is admitted by the demurrer. The contention is too broad. The correct rule is concisely stated in Sudbury v. Sudbury, 179 Iowa 1039, 1044, 162 N. W. 209, 210, as follows:

"Only such allegations are admitted as are issuable, relevant, material and well pleaded. The demurrer does not admit the conclusions of law or fact of the pleader, except when they are supported by and necessarily result from the facts set forth in the petition. Neither inferences nor expressions of opinion nor the pleader's theories as to the effect of the facts are admitted. Eckles v. Des Moines Casket Co., 152 Iowa 164; Cowell v. City Water Supply Co., 130 Iowa 671."

Accordingly, insofar as the allegation, that the hangar, tower and beacon light were operated in a proprietary capacity and not for a governmental purpose, constitutes a conclusion of law or fact of the pleader or an inference, expression of opinion or statement of the pleader's theory, it is not admitted by the

demurrer unless it is supported by and necessarily results from the facts set forth in the petition.

The appellee contends that the facts alleged in the petition show that the operations of defendant are controlled by Chapter 303.1 of the Code, 1939, relating to airports. With this contention we agree. In the case of Iowa Elec. Co. v. Town of Cascade, 227 Iowa 480, 482, 288 N. W. 633, 634, we state, "This court has expressly recognized that in this state a municipal corporation possesses only such powers as are conferred upon it by the legislature." Section 5903.02, contained in said Chapter 303.1, gives to cities the right to "acquire, establish, improve, maintain and operate airports, either within or without their corporate limits." The facts alleged in the petition show that defendant is operating such an airport. In such operation, Chapter 303.1 of the Code obviously controls.

Section 5903.11 provides:

"Any property acquired, owned, controlled or occupied for the purposes enumerated in this chapter, shall be and is hereby declared to be· acquired, owned, controlled and occupied for a public purpose and as a matter of public need, and the liability of any city or town in connection therewith shall be no greater than that imposed upon municipalities in the maintenance and operation of public parks."

In defining the liability of a city in the maintenance and operation of a public park, we stated in Smith v. Iowa City, 213 Iowa 391, 394, 239 N. W. 29, 30, as follows:

"The construction and maintenance of a public park by a municipality has been repeatedly held in this state to be a purely governmental function. Norman v. City of Chariton, 201 Iowa 279; Mocha v. City of Cedar Rapids, 204 Iowa 51; Hensley v. Inc. Town, 203 Iowa 388; Rowley v. Cedar Rapids, 203 Iowa 1245.

"The rule long established in this state is that a municipality, in the exercise of its purely governmental function, is not liable for negligence. Saunders v. City of Fort Madison, 111 Iowa 102; Ford v. Board Park Commissioners, 148 Iowa 1; Fitzgerald v. Town of Sharon, 143 Iowa 730; Hensley v. Inc. Town,

supra; Mocha v. City of Cedar Rapids, supra; Norman v. City of Chariton, supra; Harris v. City of Des Moines, 202 Iowa 53; Armstrong v. Waffle, 212 Iowa 335; Leckliter v. City of Des Moines, 211 Iowa 251; Lage v. City of Marshalltown, 212 Iowa 53.

"Governmental functions are exercised by municipalities for the benefit of the public. They are acts from which the city, as a municipality, derives no peculiar advantage, pecuniary or otherwise, but acts and functions designed to advance and conserve the convenience, comfort and welfare of the public. Clearly, therefore, the appellee city is not liable for the mere failure of its park board to keep and maintain the instrumentality or device in question, which was a part of the equipment of a public park established by the municipality in the exercise of governmental functions, free from danger."

In the case of Mayor of Savannah v. Lyons, 54 Ga. App. 661, 665, 189 S. E. 63, 66, the court states:

"In this connection it is proper to refer to the uniform airport act of March 23, 1933, now embraced in Code, §§11-201 to 11-209. Section 2 of the act, now found in Code, §11-202, is as follows: 'Any lands acquired, owned, leased, controlled, or occupied by such counties, municipalities, or other political subdivisions for the purpose or purposes enumerated in section 11-201, shall and are hereby declared to be acquired, owned, leased, controlled, or occupied for public, governmental, and municipal purposes.' It is clear that this legislation invested the airports of the State with the character of governmental institutions."

In the case of Mocha v. Cedar Rapids, 204 Iowa 51, 52, 214 N. W. 587, damages were sought for the death of plaintiff's intestate, in connection with the operation of a municipal bathing beach. In denying liability, we state:

"A fee of 10 cents was charged for the use of the bathhouse locker and towel, as well (as is claimed) as for the use of the beach. Plaintiff's intestate, a boy 12 years of age, paid the 10 cents fee, went into the water, stepped into a hole, and lost his life. Plaintiff charges negligence in various particulars not necessary to enumerate.

"It is not shown, and we cannot presume, that the nominal charge of 10 cents for the use of bathhouse, locker, and towel, as well as for the use of the beach, was for the purpose of or resulted in any profit to the city, or that the establishment and maintenance of the beach constituted a business undertaking. Bolster v. City of Lawrence, 225 Mass. 387 (114 N. E. 722); Kellar v. City of Los Angeles, 179 Cal. 605 (178 Pac. 505). A bathing beach is a general public benefit. Its maintenance is in the interest of all. It affords the public, especially the young, the means of healthy recreation and athletic exercise. It is not of the nature of a corporate or business undertaking for the corporate benefit, or in the corporate interest. In the maintenance of the bathing beach, the city or its officers were rendering a public service and performing one of the functions of government. We think the statute indicates that the grant of power under review is public, general, and governmental, and that the case is ruled by our decisions just cited. * * *

"Since the establishment and maintenance of the bathing beach by defendant constituted a public or governmental function, the city officials or employees were therein engaged in the performance of such function, exercising governmental duties,— duties delegated to and to be performed by them in behalf of the public, and not in prosecution of merely corporate business. The doctrine of respondeat superior, therefore, has no application, and the city is not responsible for their negligence."

The petition alleges that certain revenue was received by defendant in the operation of its airport. It also shows that the revenue was about 57 percent of the expense of operation. Obviously, the airport is not operated for profit to the city. Also, while the petition asserts that the tower and beacon light were necessary to secure such revenue, it is obvious that their operation was incidental to the operation of the airport as a whole, particularly the landing field thereof. By virtue of the authorities above reviewed, we hold that, in maintaining and operating such tower and beacon light, the city was engaged in a governmental function as distinguished from a proprietary one. In undertaking to repair the same, the city was also engaged in a governmental function. Pursuant to repeated pronounce-

ments of this court, the doctrine of respondeat superior has no application. The defendant is not liable for damages because of the negligence, if any, of its employee Bender.

Appellant cites a note in 75 A. L. R. 1196, wherein the writer states, ''The whole doctrine of governmental immunity from liability for torts rests upon a rotten foundation.'' However, the writer further states:

''Regardless of fundamental conceptions of justice, however, it is a well-settled general rule in this country that a municipal corporation is not liable for the negligence of its officers, agents, or servants in the exercise of public or governmental functions, from which it derives no profit or advantage, as distinguished from corporate or proprietary functions, and that the rule of respondeat superior does not apply in such cases. 19 R. C. L. p. 1108.''

We do not agree with the first quotation above set out but do agree with the second statement. The rule, applied by the trial court herein, is so firmly established by repeated pronouncements of this court that it is no longer necessary to state or justify the principles of public policy which constitute the basis for the rule.

Appellant's theory of liability because the repair of the tower was a nuisance is answered by our holding in Smith v. Iowa City, supra, hereinbefore quoted from. In that case, damages were sought for personal injuries sustained by virtue of the use of a combined teeter-totter and merry-go-round in a tourist park. There as here one count of the petition asserted that the city was liable on the ground of maintaining a nuisance. There as here a demurrer to the petition was sustained and on appeal the judgment was affirmed. In disposing of the theory of nuisance, we state (213 Iowa 393, 239 N. W. 30) as follows:

''Count III of the petition is based upon the thought that the device or instrumentality previously described, kept and maintained in the park by appellees in a dangerous condition for many months with full notice and knowledge on the part of the park commissioners and the officers of said city, constituted a nuisance. The device was in no sense, per se, offensive or dangerous to the public. It affected neither the comfort, morals nor

health thereof. It was not an annoyance to anyone and in no way operated to disturb, inconvenience or injure the public. It does not, therefore, come within the common-law definition of a nuisance nor does it come within the statutory classification thereof. A public nuisance is the doing, or the failure to do, something that injuriously affects the safety, health or morals of the public, or that works some substantial annoyance, inconvenience or injury thereto. Commonwealth v. So. Covington & C. St. R. Co., 6 A. L. R. 118; Soderburg v. C., St. P. M. & O. R. Co., 167 Iowa 123; McGill v. Pintsch Co., 140 Iowa 429; Percival v. Yousling, 120 Iowa 451; Mitchell v. Flynn Dairy Co., 172 Iowa, 582; Dunsmore v. Central Ia. Ry. Co., 72 Iowa 182; State v. C. G. W. R. Co., 166 Iowa 494; State v. Stillwell, 220 Pac. (Kans.) 1058; Subdivision 19, Sec. 6329, and Secs. 12395 and 12396, Code, 1924.

"If the device constituted a nuisance, it could, under the allegations of the petition, be such only because of the alleged negligent failure of the appellee park board to maintain the same in a condition safe and suitable for the purpose designed. A nuisance may result either from wrongful affirmative acts or from negligence. If the device or instrumentality complained of could, upon any theory, be said to constitute a nuisance resulting from the negligence of the officers of the municipality, then the question at once arises: Is either the municipality or the park commissioners liable for damages for the injuries complained of? Municipalities possess what is often described as a dual character. They exercise purely governmental functions and also those which are ministerial and proprietary in character. In so far as the acts performed are purely municipal or ministerial, the municipality may be liable upon the same basis as a private corporation or individual."

The foregoing quotation is immediately followed by the language from the opinion hereinbefore quoted to the effect that the doctrine of respondeat superior does not apply where a city is engaged in performing a governmental function. The statutory nuisances to which the court refers in the above quotation are those enumerated by Subparagraph 19 of Section 6329 and Sections 12395 and 12396 of the Code, 1939. The facts alleged in the petition herein do not bring this case within the

contemplation of such statutes any more than they did in the Smith case. Neither do they bring this case within the definition of a public nuisance as there defined by us. The court properly sustained the demurrer to Count Two of the petition as well as to Count One thereof.

By reason of the foregoing, the judgment is affirmed.—Affirmed.

HALE, C. J., and MITCHELL, STIGER, OLIVER, and GARFIELD, JJ., concur.

SAGER, J., concurs in the result.