RECTOR v. CITY OF NASHVILLE et al.—134 S. W. (2d) 892.

Middle Section.   April 1, 1939.

Petition for Certiorari denied by Supreme Court, April 2, 1939.

Baxter Cato, J. G. Lackey, and Walker & Hooker, all of Nashville, for plaintiff in error.

Albert Ewing, of Nashville, for defendant in error Board of Park Com'rs.

E. C. Yokley, Jr., Chas. G. Blackard, and W. C. Cherry, all of Nashville, for defendant in error City of Nashville.

SENTER, J. The parties will be referred to as in the court below; J. C. Rector, Administrator of the estate of Burney Rector, deceased, plaintiff, and the City of Nashville and the Board of Park Commissioners of the City of Nashville, Tennessee, defendants.

This suit is to recover damages against both defendants for the death of plaintiff's intestate as the result of electrocution by coming in contact with a heavily charged light wire, alleged to have been negligently left hanging down at a drinking fountain in Morgan Park, one of the public parks in the City of Nashville.

The accident occurred on June 9, 1934. The suit was originally brought against the City of Nashville alone, but later by an amendment the Board of Park Commissioners of the City of Nashville was made a defendant.

The declaration is one count, and sets out with much detail the alleged facts and circumstances, and the acts of negligence complained of against the respective defendants. The declaration may be considered as a declaration on the facts. To this declaration the Board of Park Commissioners of the City of Nashville filed a demurrer on several grounds. The demurrer was overruled. Both defendants filed pleas of the general issue of not guilty.

At the conclusion of plaintiff's evidence both defendants moved for a directed verdict in their favor. The motion of the defendant, Board of Park Commissioners, was sustained, on the ground that in maintaining the lighting system which lighted the park, the Board of Park Commissioners was acting in a governmental capacity, and hence was not liable for any acts of negligence of any of its employees in connection therewith.

At the conclusion of all the evidence the defendant, City of Nashville, renewed its motion for a directed verdict in its favor, and upon a consideration of said motion it was sustained and the jury accordingly directed to return verdicts in favor of both defendants, and the suit was accordingly dismissed as to both defendants. A motion for a new trial by plaintiff was overruled, and from the action of the court in directing a verdict in favor of both defendants and in dismissing the suit, and in overruling his motion for a new trial plaintiff has appealed in error to this court.

Only two errors are assigned by appellant. By the first assignment it is said that the court was in error in sustaining the motion of the defendant, Board of Park Commissioners, for a directed verdict in its favor. By the second assignment of error it is said that the court erred in sustaining the motion of the defendant, City of Nash-

ville, for a directed verdict in its favor at the conclusion of all the evidence. Under the respective assignments of error numerous questions are presented for consideration on this appeal.

By the undisputed evidence it is shown that the deceased, as was his custom, after returning from a carnival about 9:00 o'clock P. M., entered Morgan Park for the purpose of drinking sulphur water from a fountain in said park, and there came in contact with a live, heavily charged electric light wire that had been detached from its fastenings and was hanging down near the water fountain. There had been a severe electrical storm in Nashville between the hours of 8:00 P. M. and 9:00 P. M., accompanied by heavy wind and also a heavy rain storm. It is not shown definitely just what time the deceased entered the park, but there is evidence to warrant the conclusion that he was electrocuted by the live wire about 10:30 P. M. It was still raining at and after the time he came in contact with the live wire at the fountain.

It appears that there was a transformer located just inside or just outside of the park, which was to accommodate the park by stepping down the current from the wires carrying about 2300 voltage to about 110 voltage carried by the light wires within Morgan Park. It also appears without conflict in the evidence that after the electric and wind and rain storm, the transformer was burning. The only reasonable inference is that the charged wire leading to the transformer, or the transformer, was struck by lightning, and the result was that the transformer was so damaged by the lightning that it burned out the insulation separating the coils in the transformer so as to permit the voltage carried to pass on to the wires in the park. This is the theory of plaintiff and there is evidence to support it.

It also appears that the Board of Park Commissioners of the City of Nashville, provision for which board was created by an act of the Legislature, had full charge and control of Morgan Park as well as all other parks maintained by the City; that the City purchased and owned the ground which was used for the parks of the City, but the Board of Park Commissioners had full control over the parks of the City, including Morgan Park where the accident occurred. The Board of Park Commissioners employed an electrician and also a policeman to police the park and maintained the electric lighting system for the park. The Board of Park Commissioners was not authorized to levy any taxes for the support and maintenance of the park, but it was authorized to use any revenue collected from the park, or concessions within the park, and also all funds appropriated by the City for the maintenance of parks within the City, and to employ the employees used in connection with the parks.

It also appears that the City of Nashville furnishes the electric current for the lighting of the park and delivers the same to the transformer.

There is some conflict in the evidence as to just what time the City authorities received notice that the transformer had been struck by lightning or that it was burning. The records of the telephone exchange maintained by the City Light Department or the Police Department would indicate that the first and only telephone call giving notice that the transformer was burning was about 10:00 P. M. There is some evidence, however, that either the Police Department or the City Light Department was called earlier, about 9:00 or 9:30 P. M. An electrician was promptly sent by the department to the scene, and he testified that upon arrival at the scene he pulled the plugs at the transformer and in that way cut off the current from the wires that entered the park.

It is the contention of appellant that the City of Nashville failed to act promptly when first notified by telephone of the burning of the transformer, and negligently delayed in sending an electrician to cut off the current. It is also alleged that the Board of Park Commissioners were negligent in not properly fastening the wire that afforded light at the fountain and negligently permitted this wire and the guy wire to become heavily charged with electricity, resulting in the death of the deceased; and that his death was the result of the negligent failure of the Board of Park Commissioners and the proper officers of the City of Nashville to promptly correct the trouble resulting from the lightning striking the transformer and setting it on fire.

While the declaration does not aver that the Board of Park Commissioners or the City of Nashville created a nuisance, and that the defective condition of the wiring in the park constituted a nuisance, it is contended that the facts as averred in the declaration would warrant the conclusion that a nuisance was created and maintained by both the Board of Park Commissioners and the City of Nashville.

Since the pleadings have some material bearing, we quote the following paragraph from the declaration:

"At the time of the injuries hereinafter complained of the defendant City of Nashville was a municipal corporation organized and existing under the laws of the State of Tennessee, located in Davidson County, Tennessee. Under its charter and the law of Tennessee said defendant was authorized to manufacture, generate and distribute electricity in Nashville, Tennessee, and under, on and over the streets thereof, and to distribute electricity to its subordinate or related corporate boards and entities, and particularly the defendant Board of Park Commissioners of the City of Nashville; Tennessee; and in its private capacity said defendant did manufacture, generate, distribute and furnish electricity in the City of Nashville, and over, on and under the streets thereof, and did distribute and furnish electricity to the defendants, Board of Park Commissioners of the City of Nashville, Tennessee."

It is then averred as follows:

"at said time the Board of Park Commissioners of the City of Nashville, Tennessee, was a corporate entity, associated and connected with the defendant City of Nashville, and under the charter of the City of Nashville, and said defendant Board of Park Commissioners of the City of Nashville, Tennessee, had the control and management of the various parks in the city of Nashville, including Morgan Park. . . . As a part of the equipment of said parks, and particularly of Morgan Park, the defendant Board of Park Commissioners of the City of Nashville, Tennessee, built, constructed and maintained a system of electric lighting in said parks, consisting of poles, wires, guy wires and other equipment for the distribution of electricity manufactured, generated and furnished by the City of Nashville for use in lighting said parks and particularly Morgan Park at night, and for other purposes, and in so furnishing said electricity to said defendant Board of Park Commissioners of the City of Nashville, Tennessee, the defendant, City of Nashville, was acting under the authority conferred upon it by its charter and the law of Tennessee.''

It is then averred as follows:

"It was the duty of the defendant, the City of Nashville, to refrain from distributing and sending electricity over said equipment in said park when it knew, or should have known, that said equipment was in a negligent, defective, and dangerous condition and that by so doing, such electricity was likely to cause damage and injury to the frequenters of said park.''

It is then averred that both defendants negligently failed to carry out and perform each of their respective duties, and that the defendant, Board of Park Commissioners of the City of Nashville, "allowed and permitted said lighting equipment to be and become defective, out of repair and in a dangerous condition, and in such condition as that the wires or guy wires were likely or liable to fall while charged with dangerous quantities of electricity; and, after its agents and employees knew, or should have known, that said lighting equipment was in a negligent and defective condition, and that one of the guy wires thereof was down and was suspended in the air close to the ground at and near said fountain while it was negligently heavily charged with electricity, said defendant negligently failed to repair said wire and to give notice of said dangerous condition, and allowed and permitted it to hang down as aforesaid heavily charged with electricity at said place, thereby endangering the lives of all invitees coming to and near said fountain.''

With respect to the City of Nashville it is averred as follows:

"And the defendant City of Nashville through its proper agents and servants, learned that said wires were in a dangerous and negligent condition and that the transformer thereof had been struck by

lightning so that it was sending out and distributing over said wires in said park a very large, excessive and dangerous quantity of electricity; and said defendant knew or should have known that the wires themselves were in a negligent and dangerous condition; and the defendant City of Nashville knew, or should have known that said guy wires, so charged with dangerous and excessive voltage of electricity, was down and suspended in the air at and near said fountain; and said defendant City of Nashville, realizing the dangers thereof, sent one of its agents and employees to said park for the purpose of disconnecting the lighting equipment of said park from the wires of the City of Nashville so that said lighting equipment of said park would be and become dead and no longer dangerous to persons at and near said fountain, but said agents of the defendant City of Nashville negligently failed to perform the duty imposed upon the City of Nashville by law to disconnect the said wire from said lighting equipment of said park, and to refrain from distributing electricity over said wires and equipment under their known condition; and said agent negligently failed to disconnect the city wires from said park lighting equipment, and as a result of such negligent failure to so disconnect said city wires and park lighting equipment said lighting equipment of said park continued to carry dangerous, excessive and deadly quantities of electricity, thereby endangering any of the public visiting said fountain by invitation of said defendants.''

It will thus be seen from the averments in the declaration that both the defendants are charged with negligence, and it is evident that the suit proceeds upon the theory of negligence and not upon the theory of maintaining a nuisance.

There is contained in the record the following stipulation:

''Mr. Ewing: I will stipulate that the electrical equipment inside the park was the park distribution system; the city brings the electricity to the transformer; the transformer is the Park Board's and it steps the voltage down, and cuts the electrical voltage down to a hundred and ten and it is distributed over this lighting system.''

█ In disposing of the motion for a directed verdict in favor of the defendant, Board of Park Commissioners, at the conclusion of plaintiff's evidence, the learned trial judge predicated his action upon the theory that in maintaining the park and the lighting system and other matters incident to the park, that the Board of Park Commissioners was acting in a governmental capacity and hence would not be liable for any negligent acts of its employees. The rule seems to be well settled in this state that in this situation there would be no liability upon the part of the Board of Park Commissioners for the negligent acts of its employees. Mayor and City Council of Nashville v. Burns, 131 Tenn., 281, 283, 174 S. W., 1111, 1112, and the numerous cases cited and discussed by the court in that case.

In that case the court recognized that there was a diversity of opin-

ion and that there is considerable conflict between courts of other jurisdictions on this question, and Chief Justice Neil, the writer of the opinion, stated:

"We have read and considered the cases cited from other states, and, while conceding that they outnumber those we have mentioned, we do not think they are so well founded in principle. Moreover, the ground we have mentioned as governing our decision accords with that controlling other cases in this state on kindred aspects of municipal duty." Conelly v. City of Nashville, 100 Tenn., 262, 46 S. W., 565; Irvine v. City of Chattanooga, 101 Tenn., 291, 294, 47 S. W., 419; Davis v. Knoxville, 90 Tenn., 599, 18 S. W., 254; Pesterfield v. Vickers, 3 Cold., 205, 206.

It will be further observed that there is no contention made, nor could such be supported under the record in this case, that either the Board of Park Commissioners or the City of Nashville was operating this or the other parks of the City of Nashville as private institutions for the purpose of making a profit out of amusements, etc., but only for the pleasure, comfort, convenience, and general benefit of the public.

■ ■ We are further of the opinion that under the facts of the present case it cannot be successfully contended that the way and manner in which Morgan Park was being operated at the time of this accident to plaintiff's intestate that it constituted a nuisance for which the Board of Park Commissioners would be liable. We think it is the settled law in this State that in order to constitute a nuisance there must be some affirmative act upon the part of those charged. Burnett v. Rudd, 165 Tenn., 238, 54 S. W. (2d), 718.

This unfortunate accident was not the result of any affirmative act upon the part of any of the employees of the Board of Park Commissioners. It was the result of lightning striking the transformer, and as a result preventing the transformer from stepping down the current so that the wires became heavily charged with electricity. Just what caused the wire to fall at the fountain must be purely surmise. The only inference would be that the wind storm in connection with the electrical storm caused the wire to become detached from its fastening or to break and drop down, so that it was left hanging. Hence there was no act upon the part of any of the parties sought to be charged, their agents, servants, or employees that caused the wire to fall or to cause the wire to become charged with the dangerous voltage of electricity. It could not, therefore, be said that the injury was the result of a nuisance.

In the case of Burnett v. Rudd, supra, the whole subject of the liability of a municipality for injuries received because of the negligent acts of the employees of a city is discussed, and numerous cases are cited and discussed and distinguished. In that case the rule is recognized that while a city cannot be held liable for the negligent

acts of its servants and employees when the city is acting in a purely governmental capacity, it may be held liable for injuries resulting from a nuisance created by the city. In that case the rule in 46 C. J., 603, is quoted as follows:

"While a lawful thing or act may be a nuisance by reason of its negligent use or operation, nuisance is a condition, and not an act or failure to act of the person responsible for the condition. As a general rule, negligence is not involved in nuisance actions or proceedings, and is not essential to the cause of action."

In the case of City of Chattanooga v. Dowling, 101 Tenn., 342, 47 S. W., 700, it appeared that the City constructed a sewer through which objectionable sewage was deposited upon defendant's land, which greatly depreciated its rental value as well as the value of the land. That was held to be a nuisance, on the ground that in the performance of the governmental duty a nuisance was created to the hurt of an individual, and private property damaged.

In the case of Kolb v. Knoxville, 111 Tenn., 311, 314, 76 S. W., 823, the City maintained several drains for a manhole with perforated tops into which garbage was dropped and from which disagreeable odors and vapors emitted and carried by the air into plaintiff's house, thereby injuring valuable property and making the life of himself and his family uncomfortable. This was held to be a nuisance created by the city.

To the same effect is the holding in the case of City of Nashville v. Mason, 137 Tenn., 169, 192 S. W., 915, L. R. A., 1917D, 914, and in Williams v. City of Nashville, 145 Tenn., 668, 677, 238 S. W., 86. In each of these cases the municipality was held liable under the nuisance doctrine. In Burnett v. Rudd, supra, on this subject the court stated [165 Tenn., 238, 54 S. W. (2d), 720] :

"In each of these cases the city was held liable under the nuisance doctrine. It will also be observed that in each the city committed some affirmative act that constituted a nuisance, which is not true in the instant case. Counsel fail to distinguish between a condition produced by the affirmative action of the city and the negligent facts of its employees resulting in injury to a citizen."

We are therefore of the opinion that there was no error in the action of the learned trial judge in sustaining the motion of the defendant, Board of Park Commissioners, for a directed verdict in its favor, made at the conclusion of all the evidence. We are further of the opinion that the learned trial judge correctly held that the City of Nashville could not be held liable under the facts of the present suit.

In disposing of the motion for a directed verdict made by the City of Nashville at the conclusion of all the evidence, the learned trial judge seems to have predicated his action in sustaining the motion on the ground that the City of Nashville could not be held

liable for the negligent acts of the employees of the Board of Park Commissioners, which Board had full charge and control of all the electrical equipment in connection with the park. In disposing of the motion the court commented upon the facts as disclosed by the record with respect to the electric lighting system of Morgan Park and stated, in substance, that if the wire with which the deceased came in contact, resulting in his electrocution, was defectively fastened, or was an old wire that broke under the force of the wind and fell to the ground, it would be the result of the negligence of the Board of Park Commissioners and its employees, and for which the City of Nashville could not be held liable.

██ While we concur in this conclusion reached by the learned trial judge, we are further of the opinion that the City of Nashville was acting in purely a governmental capacity in supplying the current for the lighting of Morgan Park, and other of the parks in the City of Nashville.

Among the most interesting cases on this subject to which our attention has been called is the New Jersey case of Bisbing v. Asbury Park, 80 N. J. L., 416, 78 A., 196, 33 L. R. A. (N. S.), 523, 527. In that case plaintiff did not predicate its cause of action upon the grounds of negligence in permitting a depression in a grass plot near one of the sidewalks in the park to exist, but predicated its cause of action solely on the ground that it constituted a nuisance. Under the facts of that case plaintiff sought to distinguish it from the general rule that a city can not be held liable for acts of negligence when acting in a governmental capacity or performing a governmental function or duty, on the theory that that particular park was maintained by the City and operated for profit, and was therefore engaged in a private enterprise and would, therefore, be liable as would a private concern operating a private business. The New Jersey court did not accept this theory, even though it appeared that the Board of Park Commissioners of Asbury Park, to whom the duty of supervising and operating the parks and maintaining the parks owned by the municipality of Asbury Park, by leasing many concessions, and received considerable revenue from the concessions. The court enters into a full discussion of the subject and points out that neither the park commissioners nor the municipality of Asbury Park could be held liable for injuries resulting from some negligent act or conduct upon the part of either the Board of Park Commissioners or the Municipality of Asbury Park, since the same was maintained by the city and the Board of Park Commissioners for the comfort, pleasure, convenience, health, etc. of the public, and therefore it was acting in a governmental capacity and was a governmental function for which the municipality could not be held liable for any acts of negligence in maintaining the park.

Under the facts of that case, it was contended that it was a nuisance case and controlled by the rule applicable to nuisance cases.

504

We are of the opinion that the present suit is ruled by the case of Mayor and City Council of Nashville v. Burns, 131 Tenn., 281, 283, 174 S. W., 1111, and the cases and authorities therein cited.

The conclusion we reach is that there was no actionable negligence upon the part of the City of Nashville that constituted the proximate cause of the death of plaintiff's intestate, and that the learned trial judge correctly held that if there was any negligence that it was upon the part of the park commissioners in having a defective wire, or a defectively attached wire which was blown loose by the wind storm at the public fountain where people were accustomed to go to drink the sulphur water, and, further, that the City, in furnishing current for the lights of the park, and the Board of Park Commissioners in maintaining the lighting system, were acting in a purely governmental capacity and could not, therefore, be held liable for acts of negligence.

We reach the further conclusion that neither the Board of Park Commissioners nor the City of Nashville under the undisputed facts, could be charged with maintaining a nuisance, since there was no affirmative act upon the part of either the City or the Board of Park Commissioners that created the dangerous condition or situation.

It results that the assignments of error are overruled and the judgment of the lower court is accordingly affirmed.

Anderson and Ketchum, JJ., concur.