VAUGHN *v.* CITY OF ALCOA.

(*Knoxville,* September Term, 1951.)

Opinion filed June 7, 1952.

Opinion on Petition to Rehear Aug. 15, 1952.

450

JENNINGS, O'NEIL & JARVIS, of Knoxville, for plaintiff in error.

J. C. GAMBLE, of Maryville, and R. R. KRAMER, of Knoxville, for defendant in error.

Mr. Justice Burnett delivered the opinion of the Court.

This case is before us on an appeal from the action of the trial judge in sustaining a demurrer to a declaration filed by the plaintiff in error.

The suit was by the administrator for the death of his minor daughter who was killed while in swimming in a swimming pool belonging to the City of Alcoa.

The declaration is succinctly and fairly summed up by the appellees on their brief as follows:

"That City of Alcoa maintained a swimming pool in Alcoa for the use and enjoyment of persons living both within and without the City and for use of which it charged a fee and from which it made a profit; that by advertisements the defendant invited persons both within and without the City of Alcoa to use said pool; that both plaintiff and his minor daughter, Betty Ann Vaughn, resided outside said City on June 20, 1950 and that plaintiff at the time of suit likewise lived outside said City; that plaintiff's said daughter who was 9 years old paid the required fee and entered the pool on June 26, 1950; that after playing in the shallow end of the pool for awhile she was placed by her cousin on a seat near the

deep end, from which she went to a ladder at the deep end where she was seen by one of the City's life guards who asked her if she could swim and whom she told she could not; that said life guard told her she had better go to the shallow end but failed and neglected to remove her from the perilous position she was in; that the City was guilty of gross negligence in that after it discovered, or by the exercise of ordinary care should have discovered, the peril of the child, the City having the last clear chance to extricate her from her position of peril, negligently and wantonly abandoned the child and allowed her to drown; that at the time and the place the City had an inadequate number of guards, having only one near the place where the child was; that most of the guards were inexperienced and untrained; that in maintaining said pool the City was negligently maintaining a dangerous nuisance attractive to children, including plaintiff's child; that on account of the tender age of the child she was without fault or negligence on her part; that the misconduct of the City was the proximate cause of the death of plaintiff's child.''

The second count of the declaration is to all intents and purposes identical with that above analyzed but specifically alleges that the City in operating the swimming pool, as above set forth, was doing so in its proprietary function as opposed to a governmental function. The three grounds of the demurrer sustained by the trial judge aver, in effect, that the operation of this pool was done by the City in a governmental and not a proprietary function and that therefore the City was not liable for the death of his child; that the allegations were not sufficient to charge a nuisance in the construction and main-

tenance of this swimming pool; and that the maintenance of the swimming pool was not an attractive nuisance for which the City would be liable in damages for the death of his child.

In this State a municipality is liable in damages for tort to its citizens only if it was negligent in the operation of one of its proprietary functions as distinguished from its governmental functions or if it created or maintained a nuisance in the performance of one of its governmental functions. When we thus consider the questions presented in the present case they would necessarily resolve themselves into the inquiry, first, whether the operaton of the swimming pool by the City of Alcoa was a governmental or a proprietary function, and second, if the operation of the pool was a governmental function, whether or not the City created or was maintaining a nuisance.

This Court has aligned itself with those jurisdictions in this Country which hold that a municipality, in maintaining a public park, is engaged in a governmental activity,—discharging a public duty,—and is therefore not liable for injuries caused through negligent conditions therein. *Mayor and City Council of Nashville* v. *Burns,* 131 Tenn. 281, 174 S. W. 1111, L. R. A. 1915D, 1108; *Rector* v. *City of Nashville,* 1939, 23 Tenn. App. 495, 134 S. W. (2d) 892.

"The tendency of authority in more recent years has been to allow municipalities a wider range in undertaking to promote the public welfare or enjoyment. Generally, anything calculated to promote the education, the recreation, and the pleasure of the public is to be included within the legitimate domain of public purposes." 37 Am. Jur., Sec. 128, page 742. Public parks, playgrounds, swimming pools, and public

golf courses are all examples of municipal functions undertaken for the public benefit, and are under our decisions conducted by the City in its governmental capacity as distinguished from its proprietary capacity. The cases by no means from other jurisdictions are in accord and there is quite a diversity of opinion on this subject but we have aligned ourselves with those cases from those jurisdictions holding that such an act on the part of the municipality is a governmental function. For a general treatment of this subject see, 29 A. L. R. 862; *Warden* v. *Grafton,* 99 W. Va. 249, 128 S. E. 375, 42 A. L. R. 263; *Williams* v. *Longmont,* 109 Colo. 567, 129 P. (2d) 110, 142 A. L. R. 1340.

The legislature in enacting the charter for the City of Alcoa granted that City this privilege. The City was granted the privilege to maintain recreative facilities in the same sentence that it was granted the privilege to maintain charitable, educational and other like duties all of which are governmental functions.

The problem that has given us the most concern is the fact that the City of Alcoa advertises this swimming pool extensively and charges an admission fee to the public for the use of the pool. A collection of cases of various jurisdictions treating on this subject will be found in 142 A. L. R. beginning on page 1370. Some of these cases hold that by the charging of the fee the use of the pool or park or etc., is made proprietary as distinguished from governmental while others hold to the contrary. In the case of *Baltimore, Mayor and City Council of* v. *State,* 1937, 173 Md. 267, 195 A. 571, the Maryland court held that by charging a nominal fee to children for using a public swimming pool did not constitute the use of the pool a proprietary as distinguished from a governmental function of the municipality and that the municipality

was immune for suit for damages sustained by reason of the drowning of a child bathing in such pool. The courts of Kansas and Iowa held the same way. See *Hannon* v. *Waterbury,* 106 Conn. 13, 15, 136 A. 876, 57 A. L. R. 402; *Mocha* v. *Cedar Rapids,* 204 Iowa 51, 214 N. W. 587; *Warren* v. *Topeka,* 125 Kan. 524, 265 P. 78, 57 A. L. R. 555; *Harper* v. *Topeka,* 92 Kan. 11, 139 P. 1018, 51 L. R. A., N. S., 1032. In the Burns case, supra, this Court concluded that the operation of parks was a governmental function, it expressly followed the decisions of the courts last above cited, that is from Kansas, etc. We thus feel that the courts of this State are aligned with those decisions. Be this as it may, this Court in the case of *Town of Pulaski* v. *Ballentine,* 153 Tenn. 393, 284 S. W. 370, held that the Town in operating a public cemetery was doing so as a governmental function even though it charged individuals fixed prices for the lots. This Court likewise in *Nashville Trust Company* v. *City of Nashville,* 182 Tenn. 545, 188 S. W. (2d) 342, 344, said: ''An incidental charge for a public service does not render the service private or corporate.'' The Kansas court in the case of *Shoemaker* v. *City of Parsons,* 154 Kan. 387, 118 P. (2d) 508, 511, said: ''The contract provided that the city should provide water, electric current and chemicals necessary to keep the pool in operation. It does not appear either in the petition or the contract that the taking of this fifty per cent enabled the city to make a profit. Furthermore, should there have been a profit incidental to the operation of the pool such would not constitute the transaction as proprietary rather than a governmental one. See *Bailey* v. *City of Topeka,* 97 Kan. 327, 154 P. 1014, L. R. A. 1916D, 491. The manner in which the details of the business of paying for the right to operate the pool

is managed is not the controlling element. The test is whether the activity is carried on for the use and benefit of the general public. Applying this test, we have held many times that swimming pools operated as this one were operated for the use and benefit of the general public, and that the city was not liable for the negligence of its officers in carrying on such an activity."

■■ The declaration alleges that the City is liable because of the "last clear chance" doctrine. This doctrine is an arbitrary exception to the law barring recovery for contributory negligence of the plaintiff based upon the theory that the defendant is negligent in not extricating the plaintiff from his place of danger after it is discovered or should have been discovered, notwithstanding the fact that the plaintiff was guilty of contributory negligence in placing himself in danger. Probably the first reported case on the subject, and one that all of us studied in law school is the English case of *Davies* v. *Mann*, 10 M & W, 546, 549, 152 Reprint 588, 19 ERC 190. This doctrine has been enunciated under a proper state of facts at various times in this State. The doctrine though can have no application in the case now before us because liability of the City is denied on the ground that the City cannot be held for negligence of its officers in the operation of a governmental function.

■ The attractive nuisance doctrine is also raised by the allegations of the declaration. This doctrine is commonly referred to by the Courts of this Country as by the "Turntable Cases". The doctrine is an arbitrary exception to general rule of law that the owner of premises is not liable for injuries received by trespassers except injuries which were actively inflicted upon the trespasser by the owner of the premises. In England the courts of that Country have taken the view that a munic-

ipal corporation which permits attractive nuisances to exist in a public park is liable for death or injury resulting therefrom. The courts of this Country, though, have generally taken the view that the doctrine of the "Turntable Cases" is not applicable to injuries incurred in public parks, because trespass is the basic requirement of an attractive nuisance and since those using the swimming pool or park were not trespassers but were on the property as a matter of right they were not induced there by the attractive conditions of the thing. For a discussion on this question see 39 Am. Jur., page 838, Sec. 42. The case of *Warren* v. *Topeka,* 125 Kan. 524, 265 P. 78, 57 A. L. R. at page 555, discusses the matter rather thoroughly and concludes as we have concluded that the maintenance of the swimming pool here was not an attractive nuisance to children to such an extent as to bring it within the doctrine of the "Turntable Cases". For a further discussion on the subject see 142 A. L. R. at page 1373 et seq.

■ Lastly we consider whether or not the declaration alleges facts which would bring the operation of this swimming pool by the City of Alcoa into the category of creating or maintaining a nuisance so as to make the City liable for the acts here complained of. It has long been settled law in this State that in order to constitute a nuisance a city must be charged with some affirmative act on its part. *Burnett* v. *Rudd,* 165 Tenn. 238, 54 S. W. (2d) 718. There is no affirmative act charged to the City in the instant case. The only complaint is of the negligence of the defendant's employees under the premises as alleged. This is not the charging of a nuisance. In Burnett v. Rudd, supra, many of our cases holding a city liable for creating a nuisance were cited and analyzed by the Court. In the case of *Rector* v. *City of Nashville,* supra, the Court of Appeals likewise analyzed these cases

including the Burnett v. Rudd case. In each and every one of these cases the whole burden of the opinion has been to the effect that the city, to be liable, must commit some affirmative act that constitutes a nuisance and not merely have done a negligent act. The latest case on this subject, by this Court, is *Johnson* v. *Tennessean Newspaper, Inc.*, 192 Tenn. 287, 241 S. W. (2d) 399, 403, wherein this Court said:

"From all above stated, it must be necessarily concluded that these respondents were guilty under the undisputed evidence of affirmative action in bringing about and in maintaining this dangerous condition amounting in fact to a nuisance, and that the Trial Judge did not commit error in submitting the case to the jury on this theory in so far as it applied to these respondents."

This Court in reaching the conclusion last above quoted concluded that the City of Nashville by its acts, under the facts of that case, had affirmatively created the nuisance making it liable for the injury there complained of.

We cannot see where the City of Alcoa has done anything under the allegations of this declaration affirmatively to create a nuisance. The City did build and establish a swimming pool as it had a right to under its charter powers but in doing so it did so for the public benefit, and, insofar as this declaration is concerned, the swimming pool is the ordinary swimming pool with no pitfalls or hidden or latent defects in it. This being true, and swimming pools being a recognized thing the country over, and being built where people are invited and can see them we can see nothing in building a swimming pool and so conducting it as would constitute an affirmative act making it a nuisance on the part of the City.

The case of *Williams* v. *Town of Morristown*, 32 Tenn. App. 274, 222 S. W. (2d) 607, is not in point. The question there was, and it was concluded by the Court that the City of Morristown in operating the waterworks of the city was engaged in a proprietary function in doing so and therefore was liable for its negligent acts. By allowing the pool, etc., to be unguarded and in the condition that it was in that it was liable for the injuries there occasioned. The case of *City of Knoxville* v. *Lively,* 141 Tenn. 22, 206 S. W. 180, is likewise relied upon. This case though is not in point because in the Lively case there the City had left a road roller in the street which caused the damage and ''In operating a road roller, the city is engaged in the performance of a municipal duty, so that it is chargeable with the negligent acts of its employees engaged within the scope or apparent scope of their employment.'' *Boyd* v. *City of Knoxville,* 171 Tenn. 401, 104 S. W. (2d) 419, 420. The Court in the opinon in the Lively case gave the wrong reasons for its conclusions as was later determined in the Boyd case above quoted from. The real reason was that leaving the road roller this was the City operating in its proprietary or keeping up its streets rather than in its governmental function.

For the reasons heretofore stated the conclusion of the trial court must be sustained.

NEIL, Chief Justice, does not concur.

## ON PETITION TO REHEAR

BURNETT, Justice.

We have for consideration a very courteous and dignified petition to rehear in this case. For all intents and purposes it is merely a reargument of the matters so

ably argued before us and in briefs of counsel. The cases cited in support of this petition to rehear are either not controlling or were considered by us in reaching our original conclusion. We can only repeat again what Mr. Justice Story said in *Jenkins* v. *Eldredge*, Fed. Cas. No. 7,267, 3 Story 299, as follows: ''During a pretty long period of judicial life, it has been my misfortune on many occasions to have differed widely from counsel on one side or the other, in important causes, as to the merits thereof. But this, although a matter of regret, could not, as it ought not, in any, the slightest degree, influence the duties or judgment of the court.''

█ █ We in reaching our original opinion in this cause decided two propositions and two propositions only. Anything else that we said in the opinion was purely by way of argument in reaching these two conclusions which are: (a) that the operation of a swimming pool by a municipality is a governmental function notwithstanding the fact that a charge is made for admission or a profit is made on operation of the pool, and notwithstanding the fact that advertisements are made inviting persons from without the city to patronize the pool. A city under our authorities is engaged in a governmental function and is not liable for the negligence of its servants and agents; (b) the declaration filed in this cause does not charge (in our judgment) the creation or operation of a nuisance under the laws of this State rendering the city liable on the nuisance theory.

In reaching our conclusion we felt forced to follow the opinions of this Court as cited in the case of *City of Nashville* v. *Burns*, 131 Tenn. 281, 174 S. W. 1111, L. R. A. 1915D, 1108, and *Rector* v. *City of Nashville*, 23 Tenn. App. 495, 134 S. W. (2d) 892. In following these opinions we found and so stated that these opinions were based

on opinions of other courts holding as we have held in this case. We feel that we are bound by these opinions because they have been the law in this State for a great many years and it would not be right for us now to reverse them. Regardless of the merits of conclusions to the contrary and of the feelings of individual members of this Court as to the liability of a city under circumstances set out here we have felt bound by those decisions and it was for this reason that the conclusions reached by us were so reached.

The case of *Johnson* v. *Tennessean Newspaper, Inc.,* 192 Tenn. 287, 241 S. W. (2d) 399, was cited originally and referred to in our opinion. This case does not extend the governmental immunity doctrine. The instant case is entirely different from the Johnson case. We cannot see anything, as set forth in this declaration, to place the instant case under the nuisance doctrine. The nuisance doctrine controlled the Johnson case entirely.

In the petition to rehear counsel cites *Saulman* v. *Mayor of Nashville,* 131 Tenn. 427, 175 S. W. 532, L. R. A. 1915E, 316; *Conelly* v. *City of Nashville,* 100 Tenn. 262, 46 S. W. 565, and *Mayor etc., of City of Memphis* v. *Kimbrough,* 59 Tenn. 133, 134, which were not cited in the original opinion. These cases are in no way in point.

The Saulman case held that in the operation of an electric plant by the city it was engaged in a proprietary function and therefore was liable for negligence. In the Conelly case the court held that in operating a street sprinkler the city was engaged in a governmental function and therefore not liable for negligence, and in the Kimbrough case it was held that the city in operating a wharf was engaged in a proprietary function and therefore liable for negligence. Obviously none of these three

cases, when studied closely, are in anyway in point in the present case.

The conclusion that we reached in the instant case does not in anywise overrule other decisions of the courts of this State but to the contrary is based entirely on the decisions of courts of this State as cited in the opinion.

The case of *Beaman* v. *Grooms,* 138 Tenn. 320, 197 S. W. 1090, L. R. A. 1918B, 305, cited for the first time in the petition to rehear is not a city case or a nuisance case but was a case against a private operator for the negligent operation of a private bathing beach and is not in point.

The case of *Cooper* v. *Overton,* 102 Tenn. 211, 52 S. W. 183, 45 L. R. A. 591, cited in the petition to rehear is not in point because that case involved a claimed attractive nuisance on the property of a private person.

We have very earnestly and carefully considered the petition to rehear and given it much thought. For the reasons stated in our original opinion we are forced to reach the same conclusion as we reached originally. The petition to rehear must therefore be overruled.