LUCILLE NISSEN, AS TRUSTEE, v. ROGER C. REDELACK AND OTHERS.
CITY OF ST. PAUL, RESPONDENT.[1]

December 30, 1955.

No. 36,613.

---

[1]Reported in 74 N. W. (2d) 300.

*Smith & Person,* for appellant.

*Marshall F. Hurley,* Corporation Counsel, and *Robert E. O'Connell,* Assistant Corporation Counsel, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the district court directing a verdict in favor of defendant and awarding it costs and disbursements.

Plaintiff, as mother and trustee of David James Nissen, deceased, brought suit against the city of St. Paul for damages for its alleged negligence in the operation of Highland Pool resulting in the death by drowning of her son. The pool is situated within the territorial limits of Highland Park, a public park in the city of St. Paul owned and operated by the city for the recreation, diversion, and exercise of the general public.

David, an eight-year-old boy, was taken to Highland Park on June 28, 1951, with a group of children from one of the Amherst H. Wilder Charity units which was being supervised by four women employees of the charity. He had been placed with the charity unit by plaintiff to be cared for that day. During the course of the day at the park, the children were taken swimming at the pool. Sometime after they entered the pool, David was missed from the group and it was determined that he had drowned in the pool.

It is undisputed that the city of St. Paul owns and operates the Highland Pool. The evidence shows that on Saturdays, Sundays, holidays, and on Monday through Friday evenings the city charged all persons, regardless of age, 15 cents plus 3 cents federal tax for the use of the pool. On Tuesday through Friday afternoons, except

holidays, all children under 12 years of age were admitted to the pool free of charge and those over 12 years of age paid only the three cents federal tax. A charge of five cents was made for the use of a locker regardless of day or age of the user, but the use of a locker was not mandatory and there is no evidence that David used a locker on the fatal day. In addition the city sold beverages, candy, and other confections at the pool at the regular retail price. The evidence also established that the deceased would have had to pay no admission on the day he was drowned as he was under 12 years of age and it was a Thursday afternoon.

At the close of plaintiff's case in the trial court the city of St. Paul moved for a directed verdict in its favor on the ground that the city was engaged in a governmental function and was thus relieved from liability for its negligence in the operation of the pool. This motion was granted and the appeal is brought only on that question of law. Plaintiff assigns as error the trial court's ruling with reference to the governmental function and nonliability of the municipality.

The only legal issue raised is whether under the evidence here the defendant city was engaged in a proprietary function in the operation of the pool.

It is fundamental from our decisions that a municipality serves in two capacities. On the one hand are acts performed in its sovereign or governmental capacity for which there is no liability in tort for negligence; on the other are the acts it performs in its individual corporate or proprietary role for which liability may attach. Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18.

While there are no definitive standards by which it may be positively determined just when an act of a municipality is governmental and when it is proprietary, there are certain characteristics which we have recognized as indicative of a proprietary role. In Storti v. Town of Fayal, 194 Minn. 628, 261 N. W. 463, this court adopted the rule of Bolster v. City of Lawrence, 225 Mass. 387, 390, 114 N. E. 722, 724, L. R. A. 1917B, 1285, as guidance in reaching such a determination. In the Massachusetts case the court said that the underlying test is whether the act is for the common good of the public without

the element of special corporate benefit or pecuniary profit. If it is for the common good of all, there is no liability; if it is not, the municipality may be liable. See, also, Heitman v. City of Lake City, *supra.*

Plaintiff cites as controlling Emmons v. City of Virginia, 152 Minn. 295, 188 N. W. 561, 29 A. L. R. 860. In that case the park commission of Virginia, Minnesota, maintained a slide in a public park in the city. Plaintiff was injured in using the slide because of an alleged defect and sued the city and its park commission for damages. The trial court sustained the demurrer of the municipality on the ground that the operation of the public park was a governmental function and therefore no liability would attach, and on appeal the sustaining order was affirmed. Although the holding in that case resulted in no liability on the part of the city, plaintiff argues that, if there had been an allegation in the complaint that the park commission or the city charged the plaintiff or anyone else a fee for using the slide or derived any income from the equipment furnished to the public for amusement, the court would not have sustained the demurrer to the complaint. We cannot read that implication into the case even though there is dictum with reference to the lack of an allegation that there was a fee charged or income derived from the operation of the park; neither do we regard that case as controlling. To the contrary the court stated in that case that there was no duty imposed upon the city to maintain parks or equip them with instrumentalities for exercise or amusement but that it could voluntarily enter that field if its charter authorized the acquisition or maintenance of parks. It distinguishes that situation from one where a city furnishes light or water for a price and said that liability attached in the performance of such compensated services. The court took the position there that, with the single exception of streets, municipalities are not liable in damages for negligence in performing their governmental functions and commented that if that exception was to be extended to parks and playgrounds it was a matter for the legislature and not the courts to determine.

The fact situation is not the same in St. John v. City of St. Paul, 179 Minn. 12, 228 N. W. 170. The city in that case maintained a public park in which Lake Phalen is situated. Part of the lake and beach is set apart for bathing and was provided with diving scaffolds and boards. Anyone could use its facilities free of charge. Adjacent to the beach was a bathhouse where bathing suits, towels, and lockers could be rented and soap purchased from the city. Plaintiff in that case went to the bathing beach, rented a bathing suit, towel, and locker, and bought a piece of soap. After donning the bathing suit he dived from a diving board placed about 20 feet above the surface of the water and as he struck the water his head came in contact with a sharp substance which cut a gash in his scalp, for which he sued the city for damages. The court directed a verdict in favor of the city on the ground that negligence was not proved and further that in the maintenance of the bathing beach the city was performing a governmental function and was not responsible for negligence in its discharge. In that case plaintiff sought to distinguish it from Emmons v. City of Virginia, *supra*. In the Emmons case no charge was made for the use of the slide while in the St. John case plaintiff paid 25 or 30 cents for the use of the bathing suit, towel, locker, and soap. The court said there, however, that none of those items caused the injury; that the lake and diving board were for the free use of the plaintiff; and that if he had brought his own bathing suit, towel, and soap he could have dived and made use of the lake without any charge. We said there that the fact that the city provided for a price the things needed by those making use of the public bathing beach should not change the city's legal responsibility for negligence in the maintenance of its public park. It also appeared in that case that the city paid out more for guards and facilities for those who availed themselves of the bathing beach than it received in revenues from that source.

Plaintiff raises the question, however, that in the instant case the swimming pool was not available to the general public free of charge but rather that a substantial revenue was obtained by the city from those who used the pool and its incidental facilities. She contends

that that situation is not comparable to one where the general public uses a bathing beach or other recreational facility free of any charge. She argues that when a charge is imposed for the use of a facility it restricts its use and when the use is so restricted it is not for the common good of all.

It is true in the case at bar that on certain days and evenings there was a small charge for the use of the pool; that on other days, including the date in question, all children under 12 years were admitted to the pool free of charge; that a small charge was made for the use of a locker on any day; and that beverages, candy, and other confections were sold at the pool by the city. There is nothing in the record that indicates that any kind of a charge was made to David by the municipality for any services at the pool on the date he was drowned.

The record shows that regardless of the fact that the municipality made certain nominal charges at times in connection with the use of the pool and lockers, substantial monetary losses were incurred by it in the operation of the pool for each of the years 1948 to 1952, inclusive. For example, in 1951, the year in which this unfortunate drowning occurred, the total gross income of the Highland Pool was $2,165.38 while the total operating and administrative expense for the pool during that year was $7,539.63, leaving a net loss of $5,374.25; in fact, according to plaintiff's exhibit E, "Income & Expense Statement, Highland Pool," the net loss increased each year from 1948 and was greatest as shown by the exhibit in 1952, when the net loss amounted to $5,521.41.

Clearly, it cannot be said from an examination of this record that such an element of profit existed which would put the municipality in the position of being engaged in a proprietary function such as furnishing water or light to individuals for a price. Rather it is apparent from the general nature of the operation that the city was engaged in a governmental function in connection with the Highland Park Pool. Whatever money was received as profit from the sale of confections and the revenue derived from the admission fees on certain days for the use of the pool was applied to the expenses

of operating it. Even after applying such revenue, the amounts received were grossly insufficient to cover the cost of operation.

It is our opinion that under the facts of this case the incidental revenue derived from the sources referred to herein did not change the character of the municipal function nor did they alter the government exemption from liability. Baltimore v. State, 173 Md. 267, 195 A. 571; Kellar v. City of Los Angeles, 179 Cal. 605, 178 P. 505; Hannon v. City of Waterbury, 106 Conn. 13, 136 A. 876, 57 A. L. R. 402; Mocha v. City of Cedar Rapids, 204 Iowa 51, 214 N. W. 587; Vaughn v. City of Alcoa, 194 Tenn. 449, 251 S. W. (2d) 304; Kilbourn v. City of Seattle, 43 Wash. (2d) 373, 261 P. (2d) 407.

We must conclude, therefore, that the city of St. Paul because it was engaged in a governmental function in its operation of the Highland Pool is relieved from liability for its negligence in that operation.

We are not unaware that all authorities are not in accord with our decision in this case. DeSimone v. Philadelphia, 380 Pa. 137, 110 A. (2d) 431; Hoggard v. City of Richmond, 172 Va. 145, 200 S. E. 610, 120 A. L. R. 1368; Augustine v. Town of Brant, 249 N. Y. 198, 163 N. E. 732. However it has long been the settled law in this state that municipalities are not liable for negligence in the performance of governmental functions.

We agree with the trial court in its memorandum "that the evidence here would be ample to warrant the jury in finding that the City of St. Paul was negligent." In arriving at this decision we are not condoning negligence or carelessness on the part of employees or persons in charge of public recreational playgrounds, bathing beaches, swimming pools, and similar facilities. With the present-day expansion of playground and other recreational places furnished by municipalities for the general public, the greatest of care and diligence must be exercised by those connected with the operation of such places. It is a matter of common knowledge that thousands of parents in permitting their small children to visit and use public parks, playgrounds, and swimming places do so with the implied understanding at least that, inasmuch as they are operated by the

municipality, sufficient care and protection will be given their children so that no harm will come to them. This does not mean that the municipality is going to have to furnish a day nursery but no carelessness or negligence on the part of the employees in said places should be tolerated for one moment at the risk and hazard of human life. The matter of public recreation and use of recreational facilities is reaching such large proportions in this day and age that the time may well be here when greater consideration and attention must be given to the entire question of governmental immunity in connection with the operation and supervision of such places. However, it is not the function of the courts to pass laws in this respect, and any change in this policy must come from the legislature.

Affirmed.

DELL, CHIEF JUSTICE (concurring).

I concur in the result but do not feel that the well-settled law of immunity for tort liability in governmental functions should be changed.