GILBERT REIERSON v. CITY OF MINNEAPOLIS.

118 N. W. (2d) 223.

November 9, 1962—No. 38,531.

Keith M. Stidd, City Attorney, and G. V. Johnson, Assistant City Attorney, for appellant.

Gilbert E. Carlson, Richard J. Haertzen, and Howard, Peterson, LeFevere, Lefler & Haertzen, for respondent.

MURPHY, JUSTICE.

This is an action by a former inmate of the Minneapolis Workhouse against the city of Minneapolis to recover damages sustained as a result of an accident which occurred while he was working in a sawmill operation conducted by the municipality at its workhouse. The city moved for summary judgment, asserting that it is immune from liability because the workhouse is operated by it in its governmental capacity. The trial court denied the motion and certified the question as important and doubtful.

From the record it appears that the plaintiff, Gilbert Reierson, was sentenced to 30 days in the city workhouse on August 20, 1958. While serving his term, he was required to work in the workhouse sawmill. His work involved the operation of a machine called an edger, which is used in the process of manufacturing skids which the defendant sells to the public. The complaint states that the plaintiff was given no instructions as to the machine's use and that it lacked safety devices or guards of any nature. On September 5, 1958, while working on the machine, the plaintiff suffered a severe injury to his right hand.

The complaint alleges that the injuries sustained were due to the negligence of the defendant city and— .

"That the City of Minneapolis is engaged in the business of manufacturing skids which are sold for profit to private parties; that the work of plaintiff while incarcerated at said workhouse was in furtherance and a part of the City of Minneapolis' business activity; that said business activity is not a governmental function."

The sole issue which we consider on appeal is whether the plaintiff's alleged injuries arose out of a municipal function which was proprietary or governmental in nature.

It has long been held that a municipal corporation is not liable for injuries to prisoners resulting from the negligence of police guards for the reason that in the maintenance of a jail the municipality exercises governmental powers and discharges governmental duties and, accordingly, cannot be held responsible for the negligence or misconduct of officers which it must necessarily employ.[1] This principle is supported

---

[1] 41 Am. Jur., Prisons and Prisoners, § 17.

by Gullikson v. McDonald, 62 Minn. 278, 64 N. W. 812. In that case the plaintiff had been arrested January 6, 1895, and had been confined to the village jailhouse all night. The building was open, cold, and wholly unfit to be used in the winter season. The complaint alleged that for 2 hours during the night there was no fire and that during the balance of the night "said lockup was insufficiently heated," by reason of which the plaintiff sustained an illness from which he became permanently disabled. In reversing an order overruling a demurrer to the complaint it was held that a municipal corporation was not liable for maintaining its lockup or prison in a defective and unfit condition. We there said (62 Minn. 279, 64 N. W. 812):

"* * * It is a well-settled rule of law that municipal corporations are not liable for either negligent omissions or commissions in the performance of duties for which they receive no pecuniary profit, but which are imposed upon them as mere governmental agencies."

In Lamont v. Stavanaugh, 129 Minn. 321, 152 N. W. 720, L. R. A. 1915E, 460, we held that a city was not liable for injuries received by a person on its streets in an assault by a police officer, although such officer was known to the officials appointing him to be a man of vicious propensities and violent temper.

The plaintiff urges that we follow the recent decision of the Supreme Court of Florida in Hargrove v. Town of Cocoa Beach (Fla.) 96 So. (2d) 130, 60 A. L. R. (2d) 1193. That case involved an action for death by wrongful act in which the decedent's widow sought damages from a town whose police officer locked her husband in a jail and left it unattended. The jail became filled with smoke during the night, causing decedent's suffocation. The court there came to the conclusion that the doctrine that a municipality is immune from liability for wrongful acts committed in the exercise of so-called governmental functions offends the basic concept of justice and decided that the municipal corporation was not immune from liability for wrongful acts of its police officers. See, also, Ballard v. City of Tampa, 124 Fla. 457, 168 So. 654.

It is not necessary for the determination of this case to review the numerous appellate court decisions and the considerable body of legal

156

literature which has recently accumulated on the subject of municipal immunity from tort liability. This court will express its views on that subject in a decision which will shortly be released.[2] It is sufficient to say that while this state has to date adhered to the principle of governmental immunity from tort liability it is apparent that the trend of the law is to restrict rather than to extend the principle.[3] Moreover, and of controlling importance here, the rule is subject to the well-established qualification that it does not apply under circumstances where the tort arises out of the conduct of a proprietary function.

In discussing the qualification of the rule, we said in Heitman v. City of Lake City, 225 Minn. 117, 119, 30 N. W. (2d) 18, 21:

"From the antiquated maxim 'the King can do no wrong' comes whatever immunity in tort is enjoyed by a municipality. In the judicial process, the principle of nonliability has been increasingly qualified by the distinction that, while the King can do no wrong as King, he can certainly commit wrongs as an individual so far as municipal corporations are concerned. Nonliability in tort for negligence is confined to acts performed in a sovereign or governmental capacity, as distinguished from the liability attaching to acts which are performed by a municipality in its individual corporate or proprietary role. The principle of nonliability for governmental acts and liability for proprietary acts is easy to state but difficult to apply. When is the act governmental, and when is it proprietary? We have evolved no catchall test equally applicable to all situations. We have, however, come to recognize certain characteristics as indicative of the proprietary role. In Storti v. Town of Fayal, 194 Minn. 628, 632, 261 N. W. 463, 465, we adopted the rule of Bolster v. City of Lawrence, 225 Mass. 387, 390, 114 N. E. 722, 724, L. R. A. 1917B, 1285, wherein the Massachusetts court said:

" '* * * The underlying test is whether the act is for the common good of all without the element of special corporate benefit *or* pecuniary

[2]Spanel v. Mounds View School Dist. No. 621, 264 Minn. 279, 118 N. W. (2d) 795.

[3]Annotation, 60 A. L. R. (2d) 1198, 1200; Holytz v. City of Milwaukee, 17 Wis. (2d) 26, 115 N. W. (2d) 618.

profit. If it is, there is no liability; if it is not, there *may* be liability.' (Italics supplied.)"

From an examination of our authorities it may be said that whether a municipal activity is governmental or proprietary must depend upon the particular facts in each case.[4] In Heitman v. City of Lake City, *supra,* we held that the ownership and operation of a small boat harbor by the municipality was proprietary and not governmental. In Hahn v. City of Ortonville, 238 Minn. 428, 57 N. W. (2d) 254, we said that in the operation of a municipal liquor store the city was engaged in both a governmental and a proprietary function. We held in Keever v. City of Mankato, 113 Minn. 55, 129 N. W. 158, 775, 33 L. R. A. (N. S.) 339, that in the operation of a waterworks system the municipality was engaged in a private enterprise for profit and was subject to the same liabilities as private persons. In Storti v. Town of Fayal, 194 Minn. 628, 261 N. W. 463, the operation of a telephone system by an organized township was held to be a proprietary function. In Borwege v. City of Owatonna, 190 Minn. 394, 251 N. W. 915, we held that the operation of a general hospital which received compensation from practically all of its patients was a proprietary function. In Gillies v. City of Minneapolis (D. Minn.) 66 F. Supp. 467, it was ruled that the operation of a general hospital was an exercise of the municipal corporation's power to provide for public health and was a governmental rather than a corporate function. In that case it appeared that the hospital was engaged almost entirely in taking care of charity patients.

Representative of Minnesota authorities holding municipal functions to be governmental are St. John v. City of St. Paul, 179 Minn. 12, 228 N. W. 170; Mokovich v. Independent School Dist. No. 22, 177 Minn. 446, 225 N. W. 292; Emmons v. City of Virginia, 152 Minn. 295, 188 N. W. 561, 29 A. L. R. 860; Nissen v. Redelack, 246 Minn. 83, 74 N. W. (2d) 300, 55 A. L. R. (2d) 1428. The St. John case involved

---

[4]Interesting and helpful discussions of the subject of governmental responsibility for torts may be found in Orville Peterson's exhaustive article in 26 Minn. L. Rev. 293, 334, and one by Kenneth Culp Davis in 40 Minn. L. Rev. 751, 773.

an action for injuries at a bathing beach maintained by the city in one of its public parks. We held in the Mokovich case that school districts are governmental agencies created to exercise public functions for educational purposes and are not liable for injuries sustained by a pupil in a high school football game. In the Emmons case we determined that a municipal corporation was not liable for alleged negligence resulting in injury to a child while using a slide maintained in a public park. In our most recent case, Nissen v. Redelack, *supra*, we held that under the particular facts there the maintenance and operation of a swimming pool by a city involved a governmental and not a proprietary function.

In considering the application of the foregoing authorities to the case before us, it becomes necessary to examine the record as it bears upon the nature of the activity out of which the alleged injuries arose. From the record it appears that the city of Minneapolis in the conduct of its workhouse, among other things, engages in certain industrial projects consisting of the operation of a sawmill and a cement products plant. It appears from the record that for the years of 1958 to 1960, inclusive, the volume and income of the sawmill operation was as follows:

| | Number of Pallets | Total Sales | Average Sale Price |
|---|---|---|---|
| 1958 | 6,847 (approx.) | $11,503.25 | $1.68 |
| 1959 | 18,198 (approx.) | 34,480.66 | 1.89 |
| 1960 | 20,852 | 38,348.20 | 1.84 |
| | 45,897 | $84,332.11 | $1.837 (average) |

It further appears from the affidavit of the superintendent and administrative head of the Minneapolis Workhouse that "the net cost of operating [the] sawmill project [for the year 1958] over the value of the production of the project was $8,894.77."

In making our determination, we should recognize a distinction between the status of the plaintiff as a prisoner and his status as a workman employed in a business enterprise conducted by the municipality. It should readily be conceded that the incarceration of law violators is for the common good; that the maintenance of a workhouse

is a governmental function; and that the municipality is not liable for injuries occurring to a prisoner as a result of activities which are reasonably related to the execution of his sentence. On the other hand, it should be admitted that the operation of a sawmill which produces a manufactured product for sale involves an element of special corporate benefit which characterizes it as a proprietary activity. Here the city has undertaken to engage in a manufacturing business in competition with private persons engaged in the same activity. The city lays great stress on the argument that the manufacture and sale of skids in 1958 was not a profit-making venture. It does not seem to us that this fact alone is controlling. The project was then in its early stages and it would not be unusual to expect that it would not operate at a profit. The controlling factor here is that the plaintiff is alleged to have sustained injuries while employed by the municipality in a competitive business enterprise which was expected to provide a financial return that would be of benefit to the municipal corporation. We observed in Hahn v. City of Ortonville, 238 Minn. 428, 435, 57 N. W. (2d) 254, 260, "an enterprise is proprietary when it is profit making in the sense that when conducted by private persons it is operated for profit." And in the Keever case we said (113 Minn. 62, 129 N. W. 160): "When the municipality enters the field of ordinary private business, it does not exercise governmental powers." We are therefore of the opinion that, where the municipality undertakes in the operation of its workhouse to use the labor of a prisoner in a competitive business enterprise, it should be held to the same standards of responsibility and required to exercise the same degree of care for the safety of such person as is required of others who engage in a like private enterprise. We accordingly hold that the complaint states a valid claim for relief and that the order of the trial court should be affirmed.

This decision has no bearing on asserted wrongs which may occur in connection with the confinement of persons in state institutions. It appears that by Minn. St. 3.74 the legislature has given to the Legislative Claims Commission jurisdiction of such matters.[5]

Affirmed.

---

[5]Minn. St. 3.74 provides in part: "Except for the claims excluded by

section 3.75, the jurisdiction of the commission shall extend to the following matters:

\* \* \* \* \*

"(4) For injury to or death of an inmate of a state penal institution.

"(5) Arising out of the care or treatment of a person in a state institution."